CHRESTENSON, Administator, Appellant, v. HARMS, et al., Respondents.

(161 N. W. 343.)

(File No. 3877.   Opinion filed February 16, 1917.   Rehearing granted May 5, 1917.)

1.  **Master and Servant—Servant's Motorcar Injury of Third Person —Evidence of Employment, Sufficiency.**

    In a suit for damages for death of a boy run over by a motorcar owned by defendants, evidence held sufficient to warrant a finding that the driver was in performance of his duties as an employee of defendants, or one of them, at the time; the evidence being conflicting as to whether he was in such employ, or whether he was using the motorcar for himself.

2.  **Trials—Weight of Evidence—Verbal Admissions, Caution Regarding—Instruction.**

    In a suit for damages for killing a boy run over by defendants' motor car, held, that an instruction that verbal admissions are received by courts with caution, and subject to careful scrutiny, and that witnesses having the best of motives are generally unable to state exact language of admissions, and are very liable to convey false impressions of language used, was erroneous; there being no question as to correctness of the testimony of witnesses, or of any misunderstanding by them of

the meaning intended to be conveyed by defendants when making the statements testified to.

3.  **Trials—Conflicting Testimony—Question for Jury—Instructions, Whether Proper—Prejudice.**

Where witnesses of the respective parties give testimony concerning conversations with them, thus presenting a question of veracity between witnesses, it is for the jury to say which of them were telling the truth, and they were the sole judges of the witnesses' veracity; and such facts do not present a proper case for an instruction cautioning the jury concerning testimony of verbal admissions; and such instruction was prejudicial error.

4.  **Negligence—Injury to Motorcar—Proper Care, Rate of Speed, Instruction re Speed—Statute.**

In a suit for damages for killing a boy who was run over by defendants' motor car, held, that in view of Laws 1913, Chap. 276, Sec. 19, requiring motor car drivers to drive in a careful and prudent manner, "and at a rate of speed so as not to endanger" the property, life or limb of any person, an instruction that if defendants' employee was not driving at a dangerous rate of speed, or faster than permitted under the Laws of the state, "which is ten miles per hour," then the verdict should be .for defendant, was erroneous, since therefrom the jury may reasonably infer that they could not find defendant guilty of negligence so long as he did not exceed the lawful statutory speed limit.

5.  **Negligence—Automobile Driving—"Careful and Prudent Manner," Statutory Provision—Care and Prudence, What Constitutes—Question for Jury.**

Under Laws 1913, Chap. 276, Sec. 19, requiring drivers of motor vehicles on public highways to drive same in a "careful and prudent manner, and at a rate of speed, so as not to endanger * * * the life or limb of any person," held, that what constitutes a proper degree of care and prudence thereunder depends upon circumstances in any particular case, to be determined by the jury.

6.  **Municipal Corporations—Speed Limit of Motorcars—Statutes, Ordinances, as Maximum Limit.**

The automobile speed limit fixed by statutes and city ordinances, is a maximum limit, and not a minimum speed at which they may run under all circustances.

7.  **Trials—Contributory Negligence—Issue Under Pleadings—Propriety of Instruction.**

Where, under the pleadings, the issue of contributory negligence of a child, killed by being run over by defendants' automobile, was presented, although no evidence on that subject was offered, instructions on this issue were properly given.

8.  **Trials—Instructions, Request for, Necessity for.**

Where no request was made for instructions on a certain issue deemed material, error cannot be predicated upon failure of trial court to charge the jury upon such issue.

McCoy, J., not sitting.

Appeal from Circuit Court, Brown County. Hon. THOMAS L. BOUCK, Judge.

Action by F. I. Chrestenson, as administrator of the estate of Irvin C. Chrestenson, against George Harms and others, to recover damages for death of plaintiff's child. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

*G. H. Fletcher,* and *L. T. Van Slyke,* for Appellant.

*Williamson & Williamson,* and *Campbell & Walton,* for Respondents.

(2) To point two of the opinion, Appellant cited: Zenor v. Johnson, (Ind.) 7 N. E. 751; Westl v. Railway Company, (Mont.) 42 Pac. 772; Knowles v. Nixon, (Mont.) 43 Pac. 628; Scurlock v. City of Boone, (Ia.) 120 N. W. 313; Castner v. C. B. & Q. Railway Co., (Ia.) 102 N. W. 499; Sullivan v. Mauston Milling Co., (Wis.) 101 N. W. 679; Rumrill v. Ash, (Mass.) 47 N. E. 1016; Hart v. Village of New Haven, (Mich.) 89 N. W. 677; State v. Barry, (N. D.) 92 N. W. 809; Thompson on Trials, Ed. 1889, Vol. 2, p. 1782, Sec. 2431.

Respondent cited: 1 Brickwood-Sackett. Instructions, Sec. 384, 385; Mims v. Brooks, (Ga.) 59 S. E. 711; DeLoach v. Stewart, (Ga.) 12 S. E. 1067; Allen v. Kirk, (Ia.) 47 N. W. 906; Tozer v. Hershey, 15 Minn. 257; Grotjan v. Rice, (Wis.) 102 N. W. 551.

And Respondents submitted that: This instruction related only to the liability of Harms Bros. The court instructed the jury they could not find a verdict for Harms Bros., unless they found defendant Whaley guilty of negligence. This instruction was not excepted to, and not assigned as error, and became the law of the case. The jury having found that Whaley was not negligent, then this instruction could in no way affect the result of the case and was non-prejudicial, as Harms Bros. could in no case be liable unless Whaley was liable.

(3) To point three of the opinion, Appellant cited. Kauffman v. Maier, 29 Pac. 481.

(4) To point four of the opinion, Appellant cited: Kestler v. Washburn, 157 Ill. App. 532; Indianapolis Traction & Terminal Co. v. Matthews, 97 N. E. 320; St. Louis B. & M. Co. v. Droddy, (Texas) 114 S. W. 902; Neeley v. Louisville & S. I. Traction Co., (Ind.) 102 N. E. 455, and cases cited.

(7) To point seven of the opinion, Respondents cited: Ewing v. Lunn, (S. D.) 115 N. W. 526; Kime v. The Bank of Edgemont, (S. D.) 119 N. W. 1003.

(8) To point eight of the opinion, Appellant cited: Moline Plow Co. v. Gilbert, (Dak.) 15 N. W. 1.

Respondents cited: Garrigan v. Kennedy, (S. D.) 101 N. W. 1081; Connell v. Canton, (S. D.) 124 N. W. 839; Belknap v. Belknap, (S. D.) 107 N. W. 692; Luschom v. Ullom, (S. D.) 127 N. W. 463.

POLLEY, J. Plaintiff brings this action as administrator to recover damages for the death of his minor child, a boy eight years of age. The verdict and judgment were for defendants, and plaintiff appeals.

The defendants are George Harms and Fred Harms, individually, and the firm of Harms Bros., which is composed of the said George and Fred Harms, and Shelby Whaley, who is alleged to have been in the employ of said George and Fred Harms at the time of the injury complained of. Harms Bros. have a store in Aberdeen where they deal in musical instruments.

Plaintiff's said child was run over and killed by a motor car alleged to have belonged to Harms Bros. and driven by defendant Whaley, at about 8 o'clock on the evening of April 9, 1914, and said death is alleged to have been caused by the negligence of said Whaley in the operation of the said car. Defendants admitted the copartnership of Harms Bros., but entered a general denial as to all the other allegations in the complaint.

[1] The evidence shows that the defendant Whaley had been in and around the store of Harms Bros., and driving motor cars owned by them for some time prior to and after the accident, and had every appearance of being employed by them for that purpose. The defendants George Harms and Fred Harms had two motor cars. They testified that each of them individually owned one of said cars, but that the firm of Harms Bros. had no interest in either of said cars. It is a fact, however, that in a sworn

statement made by Fred Harms to the assessor he listed both cars as the property of the firm. Both of said cars were used in the firm business, and for a period of some two months before the accident defendant Whaley had driven one or the other of said cars almost daily. He accompanied and helped George Harms while moving pianos, and, while he was not permitted to drive the car while carrying a piano, he did drive on return trips and used the car on numerous occasions and for various purposes for the firm. All of the defendants testified, however, that Whaley was not in the employ of the firm except to keep up the fire in the store; that this was his only duty; and that the only compensation he received for performing such duty was that they provided him a place to sleep. George Harms and defendant Whaley testified that on the evening of the accident he (George Harms) had been using the car, and that it was standing by the curb on one of the streets in Aberdeen; that while it was there Whaley went to Harms and asked him if he (Whaley) could use the car; that Harms said "No," he could not; that he (Harms) wanted to use it himself; but that, notwithstanding such refusal, Whaley took the car and used it until after the accident occurred. This testimony was put in for the purpose of showing that Whaley was not in the employ of Harms Bros. or either of them at the time of the accident, and that they were not responsible for his conduct. For the purpose of rebutting this testimony plaintiff introduced certain statements alleged to have been made by George and Fred Harms to show that Whaley was in their employ. A witness (Anderson by name and who was chief of police at the time of the accident) testified that he had a conversation with Fred Harms a short time before the accident in regard to Whaley's employment, and that at that time Harms said that Whaley was in his employ. Another police officer testified that he heard George Harms say on the evening of and just after the accident that he had sent Whaley with his car to the garage for a Prest-O-Lite tank, but that he did not know he was going to drive all around town. Another witness testified that he had a conversation with George Harms on the evening of the accident in which Harms said that he had been out in the country with his car, and on his return he met Whaley at the Sherman House, about ten minutes before the

accident, and told him to go down to the garage and get a
Prest-O-Lite tank; that his tank was about exhausted. In con-
nection with the testimony of these last two witnesses, it may
be said that it is a conceded fact that Whaley was on his way to
the garage for the Prest-O-Lite tank when the accident occurred.
And it is also a fact that as soon as a doctor had been procured
after the accident Whaley did proceed to the garage where he
had the Prest-O-Lite tank put on the car, and that the said tank
was charged to George Harms, and afterward paid for by him
without any objection.

The testimony of these three witnesses was of vital im-
portance, and, if believed by the jury, was sufficient, in connec-
tion with the other evidence and the circumstances surrounding
the case, to have warranted a finding by the jury that Whaley
was in the performance of his duties as an employee of Harms
Bros., or at least of George Harms, when the accident occurred.

[2, 3] Both of the Harms brothers denied having made the
above statements, and in regard to the testimony thereof the
learned trial court charged the jury as follows:

"In connection with evidence in the nature of admission, you
are instructed that verbal admissions are received by courts with
caution and subject to careful scrutiny, as no class of evidence is
more subject to error or abuse. Witnesses having the best of
motives are generally unable to state the exact language of an
admission and very liable, by means of changing of words, to
convey a false impression of the language used."

The giving of this instruction was excepted to by appellant,
and it is now ureg'd as error. Appellant contends that this is an
instruction upon the weight of the evidence above set out and
invades the province of the jury. This instruction is given in
proper cases upon the authority of a rule of evidence found in
section 200 of 1 Greenleaf on Evidence. The rule is there stated
as follows:

"With respect to all verbal admissions, it may be observed
that they ought to be received with great caution. The evidence,
consisting as it does in the mere repetition of oral statements, is
subject to much imperfection and mistake; the party himself
either being misinformed or not having clearly expressed his
own meaning, or the witness having misunderstood him. It

frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say.   But where the admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature."

The reason for the rule is that the witness may have misunderstood or forgotten the exact language of the alleged statement or admission, or he may unintentionally change the wording of such statement or admission and give an impression entirely different from that intended by the person making the same. When such circumstances exist the instruction is properly given. Allen v. Kirk, 81 Iowa, 658, 47 N. W. 906; Grotjan v. Rice, 124 Wis. 253, 102 N. W. 551; Hiles v. Johnson, 67 Wis. 517, 30 N. W. 721; Moore v. Dickinson, 39 S. C. 441, 17 S. E. 998; Thompson v. Purdy, 45 Or. 197, 77 Pac. 113, 83 Pac. 139; Sullivan v. Milling Co., 123 Wis. 360, 101 N. W. 679; Hart v. Village of New Haven, 130 Mich. 181, 89 N. W. 677. "But where the admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature," and its weight should be tested by the rules applicable to testimony generally.   Castner v. C., B. & Q. R. Co., 126 Iowa, 581, 102 N. W. 499; Scurlock v. City of Boone, 142 Iowa, 580, 120 N. W. 313.   In this case there is no question as to the correctness of the testimony of the witnesses or of any misunderstanding by them of the meaning intended to be conveyed by defendants when making said statements.   The witnesses for plaintiff testified to having had certain conversations with defendants. Defendants denied ever having had any such conversations with said witnesses.   This presented a question of veracity between these witnesses, and it was for the jury to say which of them were telling the truth, and they were the sole judges of the veracity of the various witnesses.   The facts do not present a proper case for said instruction, and the giving of it under the circumstances constitutes prejudicial error.

[4] It is next contended by appellants that the court erred in instructing the jury in regard to what constituted the proper degree of care on the part of defendant Whaley in operating the car under the circumstances that existed at the time of the acci-

dent. Upon this subject, the court, after explaining to the jury what would constitute negligence under the circumstances, instructed the jury as follows:

"And if you find that the defendant Whaley was acting in such a manner as a prudent person would act under like circumstances and with due regard to the safety of the persons who were gathered at the place where this accident occurred, and was not driving his automobile at a dangerous rate of speed or faster than is permitted under the laws of this state, which is ten miles an hour, then your verdict should be for the defendant."

The first half of this instruction, standing alone, is correct, but when the whole instruction is read together, as it must be in order to get at its meaning, it is erroneous. The jury might very reasonably have inferred from this instruction that they could not find the said defendant guilty of negligence in this particular so long as he did not exceed the lawful speed limit of ten miles per hour.

[5] The law of this state in force at the time of the accident in question required persons operating motor vehicles on the public highways to drive the same in a "careful and prudent manner, and at a rate of speed so as not to endanger the property of another, or the life or limb of any person." Section 19, c. 276, Laws 1913. And what constitutes a proper degree of care and prudence under said statute depends upon the circumstances in each particular case, and is to be determined by the jury in view of all such circumstances.

[6] The speed limit fixed by the various statutes and city ordinances is a maximum limit which motor cars may not exceed in any case, and not a minimum speed at which they may run under all circumstances.

[7] Appellant complains of certain instructions given by the trial court relating to contributory negligence of the child at the time of the accident, and also upon the part of his parents. This instruction was correct, so far at least as it related to contributory negligence of the child. It is alleged in the complaint that the accident occurred "without negligence on his part." This allegation is denied by the answer; therefore the issue of contributory negligence was presented by the pleadings, although no evidence on that subject was offered by either party.

[8] Appellant complains of the failure of the trial court to charge the jury relative to certain issues deemed by him to be material. No request was made by appellant to give such instructions, and, in the absence of such request, error cannot be predicated upon the failure of the trial court to charge the jury upon particular issues. Lunschen v. Ullom, 25 S. D. 454, 127 N. W. 463.

The judgment and order appealed from are reversed.

McCOY, J., not sitting.