BENNETT, Respondent, v. MURDY, Appellant.

(249 N. W. 805.)

(File No. 7416. Opinion filed August 12, 1933.)

*Williamson, Smith & Williamson* and *Harkin & Noll,* all of Aberdeen, for Appellant.

*Pat Morrison,* of Mobridge, and *H. O. Hepperle,* of Aberdeen, for Respondent.

WARREN, J. In March, 1930, plaintiff employed defendant to do certain surgical work, and on the 29th day of March, 1930, defendant performed an operation upon the plaintiff for the removal of two middle turbinal bones, called turbinates in the briefs, from her nasal cavity. A local anæsthetic was administered, and the turbinals were removed by using a scissors which cut through the base of the bony structure. Plaintiff claims that during the operation portions of the turbinate bones were lost. One was about the size of a dime, though rectangular in form, and the other about the size of the end joint of the little finger. She claims that during the operation, and after the turbinals had been severed, the defendant was unable to find them; that he probed for them repeatedly and finally passed the probe clear through her nasal cavity while her mouth was open so that he could see the probe as it passed through, but was unable to find the turbinals, and stated that they must have gone down. It is further contended that the two pieces of turbinate bone passed down her throat into her trachea and lodged in her bronchial tubes or lungs, and as a result

plaintiff developed severe illness and acute tuberculosis. At the time she commenced this suit, she had been confined in the state tuberculosis sanatorium at Sanator, S. D., for a period of approximately eighteen months. The record contains considerable medical testimony covering a large amount of explanatory matter as to how operations for the removal of turbinal bones are performed, testimony as to the anatomy of the nose, throat, and lungs, also the customary methods of performing such operations, the treatment after the operation, the methods and surgical instruments used in the discovery and removal of foreign objects which may have been inhaled into the lungs. Some of the medical testimony was elicited through the use of hypothetical questions and some testimony from examination of the plaintiff by medical witnesses. There is also testimony by nonmedical witnesses relating to facts as to the operation and occurrences after the operation.

After the operation, plaintiff developed a violent cough. The defendant prescribed certain treatment, and it would seem that some three or four times thereafter made certain examinations of the plaintiff's condition. At the close of the plaintiff's case and at the close of all of the evidence, the defendant moved for a directed verdict, which was denied. The jury returned a verdict for the plaintiff. A motion for judgment notwithstanding the verdict was made and denied. Thereafter a judgment was made and entered, and a motion for new trial was made and denied. The defendant is now in this court upon an appeal from motion denying new trial and from the judgment.

We have before us a large and voluminous record which contains much matter to be decided and condensed into an opinion. Space will not permit us to treat specifically and at length all matters raised by the appellant. We will therefore confine this opinion to the vital and essential parts controlling in the facts and law to be applied in this case. The evidence discloses the facts that respondent was operated on in the Lincoln Hospital at Aberdeen, S. D. There was a nurse present during the operation. The appellant anæsthetized the parts and used certain instruments upon the respondent's nose while she was sitting on a chair in front of him. After the severance of the bone, appellant remarked that he could not see what he was after. Immediately thereafter he probed around in the nose. The respondent was required to open her

mouth, and he looked into the mouth and probed around, pushing the probe through so that he could see it in the back part of her mouth. The respondent's version is that appellant stated that he was perfectly satisfied that the severed bone was not in her head and that it had gone down. He then operated on the other turbinal bone and removed it.

The respondent urges in support of her claim of negligence that the appellant was careless in the performance of the operation in that he failed to remove the severed bones from the system of the patient; that such an operation implies, not only a severance but a complete removal from the system, so that the severed bones do not cause injury to the parts of the body, and that negligence in part consisted of failure to safeguard the patient against matters incident to the operation; that the appellant failed to exercise due care in getting these bones from the body of the patient and in permitting them to remain in a dangerous location.

■ The situation is quite similar to cases where surgeons leave instruments, sponges, and other foreign articles inside of patients operated upon. See Palmer v. Humiston, 87 Ohio St. 401, 101 N. E. 283, 45 L. R. A. (N. S.) 640, and Ault v. Hall, 119 Ohio St. 422, 164 N. E. 518, 60 A. L. R. 128; 28 N. C. C. A. 658. From the evidence it would appear that one of the turbinates had gone down into respondent's system and that the appellant was looking for it. This evidence was not denied by the appellant. The appellant's negligence in performing the operation was submitted to the jury under appropriate instructions and the acts of the defendant in severing the turbinates, the caution and care he used in performing his work, the care and skill he used in extracting and preventing the turbinates from falling into the respondent's throat and ultimately being inhaled into her lungs were all questions for the jury, who had a right to consider the degree of care and skill exercised in the severing of the turbinates and the swabbing and probing in the search for the missing parts. All of this testimony was submitted to the jury, together with the evidence produced by both experts and nonexperts. There was evidence by experts as to whether or not appellant used due care and as to methods or treatment ordinarily used among physicians and surgeons of ordinary skill and learning of such members of the profession as were practicing within the appellant's community. The appellant argues

that he is not liable, and that he comes within the rule that if there was any negligence it was a matter of judgment, and that he did possess the requisite qualifications and applied his skill and judgment with ordinary care, and that, under previous decisions of this court, he is not liable for an honest mistake or for an error of judgment in making a diagnosis or in prescribing a mode of treatment.

■ We feel that the doctrine of nonliability because of error of judgment is not applicable here, for the reason that the appellant made no attempt in his defense to bring himself within that rule. We have examined the evidence with considerable care, and especially appellant's testimony, and find that he stands squarely upon the contention that no turbinate bones were lost and no such bones ever reached the respondent's lungs. The appellant's testimony in that respect is in substance that the turbinate bones came out in one whole piece, and that that is true of both sides of the nose; that he used a little snare to remove the turbinate bones, and that there was no part of the turbinate that went into the patient's system at all; that he fastened it to a clip and removed the entire part he severed from her nose, and that was true as to both sides of the woman's nostrils. Appellant in part testified: "No part of it went into her system. I didn't observe any part of the turbinate bone drop back into her nose or into her system on either side. Each part of the bone or turbinate that I removed I had hold of with some kind of instrument and carefully removed it. There were two big pieces severed. There were some small pieces severed as a result of the operation. They cracked when you pulled the base. The turbinate cracked and I could see little pieces inside the membrane. There were some small pieces that were severed but they were attached to the base where the turbinate came out. After I removed the principal part of the bone I removed some small pieces."

■ There is substantial evidence to the effect that the respondent during violent paroxysmal coughing coughed up a small piece of bone about the first or second week in April, 1930, that she showed it to Dr. Ramsey, and later took the piece of bone and showed it to the appellant at the clinic at Aberdeen. The respondent claims that she gave the appellant this piece of bone, and that he told her at that time that without a doubt it was the piece of

turbinate bone, and that he did not give it back. There is evidence that, while respondent was confined in the sanatorium, she coughed up another piece of turbinate bone during a violent coughing spell. This piece of bone was preserved and introduced as an exhibit. There is testimony in corroboration in both instances so that the respondent's testimony of the turbinated bones being expelled from the lungs does not stand on respondent's testimony alone. If the testimony of the appellant to the effect that he removed the pieces of turbinated bone and examined them was reasonable and worthy of belief, why did he push a probe through the nasal cavity and why did he tell the respondent that the bone must have gone down? Why did he make several X-ray and fluoroscopic examinations? His testimony is inconsistent with what he did at the time of performing the operation and also his subsequent acts. The appellant's testimony cannot be harmonized with what he did and said during and shortly after the operation. There is a sharp conflict in the testimony as to whether or not these foreign substances entered the respondent's lungs. It was submitted under appropriate instructions to the jury. They saw fit to believe the respondent and her witnesses, and we feel that there is substantial and credible evidence to sustain the verdict of the jury.

The appellant having elected to stand upon a question of fact squarely at issue in the case both by the pleadings and by the testimony, the respondent having said that the bones were allowed to get into her lungs and remain there, and the appellant having said that they never reached her lungs, but were carefully removed from the nose during the operation, we must hold that the issue was decided against the appellant by the verdict of the jury. The appellant did not excuse his conduct because of any error of judgment into which he might have fallen. He simply states that nothing happened. He is in an entirely different position than he would have been had he taken the position that he was exercising his best judgment and was giving careful attention to what he was doing. Then it would be conceded that he would not have been liable for a mere error of judgment. There is no suggestion in the record, however, of such a situation. In fact, the record discloses a condition almost parallel to the facts in the case of James v. Robertson, 39 Utah, 414, 117 P. 1068, 1074:

"In this case, however, the principle cannot be applied to its

full extent, for the reason that appellant did not come into court justifying his act or conduct; that is, he does not claim that, if he permitted a solution of carbolic acid to come in contact with the cornea of respondent's eye, in doing so his conduct was justified by the ordinary and usual methods which are pursued by those of his profession under like circumstances. In other words, appellant does not claim protection because he has conformed to the standards of his profession. What he really contends for in this connection is: (1) That no part of the solution he used was through any act of his permitted to enter respondent's eye, and hence he was not negligent in that regard; (2) that, although it were conceded that some of the solution did enter respondent's eye, yet the solution was not of sufficient strength to produce the injury complained of; and (3) that the result to the eye was produced by a cause or causes for which he was not responsible. It is apparent that most, if not all, of the conclusions involved in the foregoing propositions do not necessarily call for expert evidence."

■■ The appellant complains that the court ruled incorrectly upon the admission of evidence, and has set forth a number of assignments of error to rulings on hypothetical questions, and has devoted some forty odd pages to this branch of alleged error. It is quite difficult to single out any specific objection in said assignments raised, but an examination of all said alleged errors seems to indicate that in many instances the objection is general and not as specific as it should be. For instance, the objection: "That is objected to for the reason that it is not a proper hypothetical question. It assumes facts not in evidence in this case; does not ask for the doctor's opinion as to proper practice but attempts to have him testify to a fact which does not appear and is not disclosed by the testimony in this case; no foundation has been laid, irrelevant and immaterial. The facts stated therein have no application to the case nor is there any showing that the nasal tract—opening—of the plaintiff was normal."

The above objection was interposed to the question which had been asked: "Now, Doctor, if after a turbinate bone or portion thereof of the size of Exhibit 1-A were severed and removed in the nose and examination was made with the head mirror and seeking to find it and it wasn't located in the cavity, where would that piece of bone or turbinate bone be likely to be in the nose?"

It will be observed that, although the objection is quite lengthy, it is not specific. For instance, the statement, "It assumes facts that are not in evidence in this case." What facts? An examination of the former rulings of this court shows that the attorney making the objection relating to hypothetical questions should point out briefly to the trial court wherein the different portions of the questions may be misleading, immaterial, irrelevant, incompetent, or fail to point out the facts. The objection before us is more in the nature of a blanket objection, as it does not contain any specific pointing out of the claimed defect so as to assist the court in what respect the question assumed facts not in the evidence in the case. In other words, this objection, as well as many of the other objections, is too general to call the trial court's attention to the precise point. In dealing with objections to hypothetical questions in the case of Erickson et al v. Webber at al, 58 S. D. 446, 237 N. W. 558, 559, 80 A. L. R. 914, this court said: "We are of the view that the form of the objection was too general to call the trial court's attention to the precise point on which counsel relies. There was no intimation in the objection stated that counsel regarded the question as an invasion of the province of the jury. Crouch v. National Livestock Remedy Co., 205 Iowa, 51, 217 N. W. 557; Howland v. Oakland Consol. St. Ry. Co., 110 Cal. 513, 42 P. 983."

■ The rule relating to the form and content of hypothetical questions is quite concisely stated in Dean v. Seeman, 42 S. D. 577, 176 N. W. 649, as follows:

"The propriety of allowing hypothetical questions rests largely in court's discretion, and where allowable, trial court's duty is to see they are properly framed, are responsive to issues and assume only facts supported by some evidence; but party framing same has fairly wide latitude, within reasonable bounds as to his theory of case and evidence supporting it; opposite party having right to rebut the facts thus assumed as well as testimony of witness.

"Whether facts testified to in response to hypothetical questions have been actually proven, is a question for jury."

The rule as enunciated in Dean v. Seeman is fully supported by leading authorities and decisions relating to form and content of hypothetical questions. See 5 Enc. of Evidence, 617; 22 C. J. 711; Nangle v. Cudahy Packing Co., 112 Kan. 289, 212 P. 108. In

Roark v. Greeno, 61 Kan. 299, 59 P. 655, the court said: "An objection that a hypothetical question assumes facts not proved ought to point out with particularity the facts which are claimed to be untruly stated."

Applying the rules as just stated to the hypothetical questions and also to questions which were objected to as if they were hypothetical questions (but in fact were not), we must sustain the rulings of the trial court and hold that it did not commit prejudicial error in any of its rulings.

The appellant insists that the court erred in refusing to give an instruction dealing with the law relating to a physician's or surgeon's liability for an error in judgment. The appellant by his pleadings and testimony seems to have placed himself beyond the invoking of such an instruction, as was clearly pointed out previously in this opinion.

Another assignment of error complains of the fact that a portion of instruction No. 8 failed to correctly state the law: "But the court does submit to the jury for its determination as a question of fact whether or not the defendant did use the proper care as proper care is herein defined, in the removal of the several bones from the system of the plaintiff."

Appellant contends that this instruction should not have been given, for the reason that the evidence was wholly insufficient to sustain a verdict based upon the issues submitted to the jury, and that the court failed to advise them upon the law upon the non-liability of the defendant for his errors, if any, in judgment, and that nowhere in the instructions did the court advise them that the alleged negligence of the defendant must be established by expert medical testimony.

Examination of the various instructions just referred to and all other instructions objected to by appellant clearly discloses that the court properly instructed the jury. It is true that the appellant complains that the court did not instruct the jury that the negligence in this case, if any, would have to be established through the testimony of experts. We do not consider that in this case such an instruction would be warranted. There is a combination of evidence in this case given by both experts and nonexperts, and the jury had the right to take into consideration all of the evidence and all of the facts and circumstances, and was not limited

in this case to the naked evidence of experts. Myrlie v. Hill, 58 S. D. 330, 236 N. W. 287. See, also, Nelson v. Parker, 104 Cal. App. 770, 286 P. 1078, and Laughlin v. Christensen (C. C. A.) I F. (2d) 215.

■ A further examination of the record in this connection fails to disclose that the appellant made a request for an instruction that the jury could not find negligence except on evidence furnished· by experts.

"The omission of the court to instruct upon any given question or issue is not reversible error unless it was first requested to instruct thereon. Garrigan v. Kennedy, 19 S. D. 11, 101 N. W. 1081, 117 Am. St. Rep. 927, 8 Ann. Cas. 1125; Lunschen v. Ullom, 25 S. D. 454, 127 ·N. W. 463; ·Christenson v. Harms, 38 S. D. 360, 161 N. W. 343, affirmed on rehearing in 39 S. D. 430, 164 N. W. 1027; Kirk v. Thompson, 40 S. D.·392, 167 N. W. 399."

We feel that the instructions given by the court are clear, concise, and to the point, indicating to the jury the rules under which the evidence should be applied on the vital questions as to whether or not the conduct of the appellant amounted to negligence.

■ The appellant requested the following instruction to be given: "The court instructs the jury that a physician or surgeon is not bound to use any particular method or treatment, and if among physicians and surgeons of ordinary skill and learning, there is a diversity of opinion as to the advisability of the use of any instrument or method for the discovery or removal of the turbinate bone alleged to have been lost in the respiratory tract of this plaintiff, it is not negligence for the defendant to fail to use such method or instrument. And, the fact that some other physician or surgeon testified in this case that he might or would have used or advised the other different method than was used by the defendant in this case, does not establish or even tend to establish negligence or improper examination or treatment on the part of the defendant."

The court refused to give the instruction, and we believe properly so. An examination of the requested instruction clearly discloses the fact that it could not apply to the facts in the record before us. The evident design of the instruction is to relieve the defendant of liability because of diversity of opinion among the experts, but the main trouble with the requested instruction is that

it is not applicable to the facts in the case, as there was no diversity of opinion among the respondent's experts. The most that can be said as to the design of the requested instruction is that it was for the purpose of relieving the defendant of responsibility because in the opinion of one of appellant's experts the proper degree of care and diligence did not require the use of a bronchoscope. In effect, the requested instruction would be equivalent to the court directing a verdict, and would not be proper under the record in this case. The court did not err in refusing to give the requested instruction.

Other assignments of error, and which have not been specifically treated, are not, in our opinion, prejudicial, and would not in any event change the result arrived at.

The order and judgment appealed from are affirmed.

RUDOLPH, P. J., concurs in result.

POLLEY, CAMPBELL, and ROBERTS, JJ., concur in affirmance.