Unified Judicial System

 

 
 George Wuest as Guardian Ad Litem for Perry Carver, Plaintiff and Appellant
and Shirley Carver, individually and as Guardian Ad Litem for Jesse Carver and Tina Wilson
Plaintiff v.
McKennan Hospital, a South Dakota Corporation, Defendant and Appellee
and Laurie M. Hill, M.D., and Bernie Bahnson, M.D. and Central Plains Clinic, Ltd
Defendants [2000 SD 151]
South Dakota Supreme Court
Appeal from the Circuit Court of The Second Judicial Circuit
Minnehaha County, South Dakota
Hon. Judith K. Meierhenry, Judge
Michael A. Wilson
Quinn, Day & Barker Rapid City, South Dakota
Attorneys for appellant Wuest
 
James E. McMahon and Lisa Hansen Marso Boyce, Murphy, McDowel & Greenfield Sioux Falls, South Dakota
Attorneys for appellee McKennan Hospital
 
Argued March 21, 2000
Opinion Filed 12/6/2000
 
TIMM, Circuit Judge
 
[Â¶1.] Perry Carver's guardian ad litem, George Wuest, and Shirley Carver (collectively Carver) filed suit against McKennan Hospital (McKennan) and Perry Carver's physicians alleging medical negligence.  The claim centered on McKennan's staffing policies and whether Carver's bathroom door should have been locked.  The case was tried before a jury which returned a verdict in favor of all defendants.  Carver now appeals only the verdict in favor of McKennan.  We affirm on all issues.
FACTS
[Â¶2.] On the afternoon of November 19, 1993, Perry Carver walked into the Sioux Falls police station, claiming he was suicidal.  Police officers transported him to McKennan's emergency room, where he was immediately admitted into the hospitalâs Acute Adult Unit on a 24-hour mental illness hold.  He was diagnosed with depression, suicidal thoughts and alcohol intoxication.
[Â¶3.] At 6:00 p.m., a nurse in the Acute Adult Unit assessed Carver who continued to express suicidal tendencies.  Later that evening, another nurse heard a loud noise in Carver's room.  Upon investigating, she found a chair lying on its side and Carver sitting on his bed.  He had removed his hospital gown, torn it into pieces and tied them back together.  Carver told the nurse that if the chair had not slipped, he would have been dead by the time she found him.  The nurse viewed this incident as a suicide attempt and, after consulting with Carver's physician, imposed a continuous one-to-one observation over him.  The one-on-one observation continued until 11:30 p.m., when the observing nurse's shift ended.  After that time, Carver was checked every 15 minutes.  In addition, the nurse on duty positioned her chair so that she could see into his room.  Carver slept for the remainder of the night.
[Â¶4.] At 7:00 a.m., on November 20th, the morning shift arrived for duty.  The staff continued making 15 minute observations of Carver.  At 8:00 a.m., Carver again expressed suicidal tendencies to a nurse.  She encouraged him to take a shower, because she believed that he would feel much better if he cleaned up.  The bathroom door in Carverâs room was unlocked in order to allow him to clean up.  At approximately 8:45 a.m., a psychiatrist went into Carver's room to conduct an assessment of his condition.  When the doctor finished, he left the room, entered a room near the nurse's station, and began writing his report.
[Â¶5.] The nurse did not see the psychiatrist leave Carver's room.  After she noticed him writing his report, she went to check on Carver.  At 8:59 a.m., she discovered him in his bathroom, hanging by his robe.  He was not breathing and his heart had stopped.  He was resuscitated, but by then had suffered severe, permanent brain damage.  Carver currently resides in a nursing home.
[Â¶6.] On appeal, Carver raises the following issues:
Did the trial court err by refusing to instruct the jury on the adverse inference rule?
 
Did the trial court err by refusing to instruct the jury on the doctrine of res ipsa loquitur?
 
Did the trial court fail to clearly instruct the jury regarding liability and causation?
 
Did the trial court err in replacing a juror with an alternate juror?
 
Did McKennan's counsel make unfairly prejudicial statements in its closing argument, thereby requiring a new trial?
 
ISSUE ONE
 
[Â¶7.] Did the trial court err by refusing to instruct the jury on the adverse inference rule?
 
[Â¶8.] This Court reviews a trial court's refusal of an instruction under the abuse of discretion standard. State v. Wright, 1999 SD 50, 593 NW2d 792.  To establish error, the appellant must establish that the proffered instruction was a correct statement of the law applicable to the facts.  Schaffer v. Edward D. Jones & Co., 1996 SD 94, Â¶ 19, 552 NW2d 801, 808.  In addition, it must be established that the "jury might and probably would have returned a different verdict if the proposed instruction had been given."  Bauman v. Auch, 539 NW2d 320, 323 (SD1995).
[Â¶9.] During the course of jury instruction settlement, Carver requested an instruction on the adverse inference rule.  Carver claims he was entitled to the adverse inference instruction because McKennan destroyed the policy regulating staff to patient ratios for the Acute Adult Unit after Carver hung himself.  More significantly, Carver claims McKennan destroyed the policy in spite of knowledge that staffing issues were critical in the events leading to Carver's hanging.  Carver claims such conduct amounted to spoliation[1]  and that an adverse inference instruction is appropriate when a party commits spoliation.
[Â¶10.] McKennan asserts that the policy was destroyed as a matter of business routine after Carver's hanging, but prior to the commencement of this lawsuit.  It argues that since the destruction was due to a matter of routine procedure, the adverse inference instruction was not appropriate.
In South Dakota, we recognize and use the "adverse inference rule."  This rule provides that if a party has evidence under its control and does not present that evidence, an inference may be drawn that the evidence would not support that party's claim.  Amert v. Lake County Bd. of Equalization, 1998 SD 66, Â¶ 28, 580 NW2d 616, 621 (quoting Sabhari v. Sapari, 1998 SD 35, Â¶ 14, 576 NW2d 886, 891, n 6 (quoting Matters v. Custer County, 538 NW2d 533, 536 (SD 1995))).  See also Klinker v. Beach, 1996 SD 56 Â¶ 15, 547 NW2d 571, 576, n 2 (stating that because a relevant document was not offered in support of any claims made by the plaintiff, the court will "assume it would not provide such support")(citing Matters, 583 NW2d at 536).
 
In re Estate of Klauzer, 2000 SD 7, Â¶ 17, 604 NW2d 474, 478.
[Â¶11.] The burden was on the spoliator, McKennan, to show it acted in a non-negligent, good faith manner in destroying the document sought.  An adverse inference is not automatic, it simply creates a presumption that the evidence sought would be unfavorable to the spoliator.  See DeLaughter, 601 So2d at 823 (finding that the adverse inference instruction failed to inform the jury that the hospital had the burden to show it did not destroy or misplace the hospital record); 29 AmJur2d Evidence Â§ 244 (1980) (stating any presumption that arises from the spoliation of evidence is rebuttable and open to explanation).  The spoliator must provide an explanation for the disappearance of any documentary evidence.  A duty is imposed upon a hospital such as McKennan to give an âadequate explanation for the absence of the [staffing procedure policy].â  DeLaughter, 601 So2d at 821.  âTherefore, the jury was entitled to be told why the [staffing procedure policy] was missing, . . . a relevant fact.â  Id.  
[Â¶12.] The trial court, as gatekeeper of evidence, must use its discretion in deciding whether an adverse inference instruction should be given.  The DeLaughter court explained:
As with any other evidence, the explanation for the original recordâs absence may be fully satisfying either that it was lost through no fault of the hospital, that the hospital deliberately destroyed it, or as in most cases, somewhere in between, thereby making it a jury issue.  For example, where the evidence is positive that the hospital had been destroyed by fire, such circumstance would adequately account for the loss of the original medical record without fault attributable to the hospital, and there would be no reason for the jury to be instructed on a presumption or inference arising from the loss.
 
Id.  But if the trial court concludes the spoliator maliciously destroyed the document, it is unavailable because of negligence, or for some other reason evidencing a lack of good faith, the jury should be given an adverse inference instruction.  Id. at 822.  The jury must then determine if the explanation given is reasonable, and if it finds it is reasonable, then the jury may not infer the missing document contained unfavorable information to the opposing party.  Id.
[Â¶13.] One factor to consider in determining whether a spoliator acted in good faith is an explanation that the evidence sought was destroyed as part of routine destruction in the course of business.  McKennan asserts that its policy regulating staff to patient ratios for the Acute Adult Unit was updated as a matter of annual business routine.  Many courts provide a safe harbor for a party who destroys a document before litigation commences if the destruction was done in the ordinary course of business, which indicates a degree of good faith so that an adverse inference should not be drawn.  Scott M. Kline, Advising Clients on the Destruction of Documents Prepared and Used to Formulate Discovery Responses: Perils and Pitfalls, 11 RevLitig 47 (Winter 1991).[2] 
[Â¶14.] Allowing a defendant business such as McKennan to offer the routine or formal document destruction policy as an explanation for loss of evidence is simply realistic for many companies, especially large corporations who cannot as a practical matter afford the time or expense to retain every single document involved in its business.[3]   If a trial court deems an adverse inference instruction is necessary for the jury, then it will be up to the jury to decide whether a defendantâs explanation for loss or destruction of documentary evidence due to bad faith, negligence or routine destruction warrants an adverse inference against the defendant.
[Â¶15.] Even if it was an abuse of discretion to fail to instruct the jury on the adverse inference rule, it was harmless error based on this Courtâs resolution of  Issue Three.  The appropriate standard of care to which a hospital must comply is primarily âthat care which is available at hospitals within the same or similar communities.â  Shamburger v. Behrens, 418 NW2d 299, 306 (SD 1988).  In this case, claims that the applicable standard of care can be established by the hospitalâs  internal policies are marginal.  For this reason, Carver failed in his burden of establishing that the âjury might and probably would have returned a different verdict if the proposed instruction had been given.â  Bauman, 539 NW2d at 323.
ISSUE TWO
[Â¶16.] Did the trial court err by refraining from instructing the jury on the doctrine of res ipsa loquitur?
 
[Â¶17.] During the course of jury instruction settlement Carver requested an instruction on res ipsa loquiter.  Carver claims the proposed instruction was supported by the facts in the record.  We do not agree.
[Â¶18.] In Van Zee v. Sioux Valley Hospital, 315 NW2d 489, 492 (SD 1982) this Court stated:
The three essential elements which must be present to warrant application of the doctrine of res ipsa loquitur are: (1) the instrumentality which caused the injury must have been under the full management and control of the defendant or his servants; (2) the accident was such that, according to knowledge and experience, does not happen if those having management or control had not been negligent; and (3) the plaintiff's injury must have resulted from the accident. Fleege v. Cimpl, 305 NW2d 409 (SD 1981); Kramer v. Sioux Transit, Inc., 85 SD 232, 180 NW2d 468 (1970).  Also, the doctrine of res ipsa loquitur is to be utilized sparingly and only when the facts and demands of justice make its application essential. Shipley v. City of Spearfish, 89 SD 559, 235 NW2d 911 (1975); Barger v. Chelpon, 60 SD 66, 243 NW 97 (1932).  
 
In cases involving medical negligence, which is the cause of action pleaded here, an additional element is required for the doctrine of res ipsa loquitur to be applied: namely, negligence must be established by the testimony of medical experts, unless the kind of negligence involved is within the realm of laymanistic comprehension. Block v. McVay, 80 SD 469, 126 NW2d 808 (1964); Lundgren v. Minty, 64 SD 217, 266 NW 145 (1936); Bennett v. Murdy, 61 S.D. 471, 249 NW 805 (1933); Myrlie v. Hill, 58 SD 330, 236 NW 287 (1931).
 
[Â¶19.] Carver's own experts testified that suicides occur in hospitals and that patients commit suicide in the absence of a hospitalâs or physicianâs negligence.  Carver failed to establish that the suicide attempt was such that, according to knowledge and experience, does not happen if those having management or control had not been negligent.  Therefore, the proposed instruction was not supported by the facts and was properly refused.
ISSUE THREE
[Â¶20.] Did the trial court fail to clearly instruct the jury regarding liability and causation?
 
[Â¶21.] Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury.  Sommervold v. Grevlos, 518 NW2d 733, 739 (SD 1994).  However, "misleading, conflicting, or confusing instructions create reversible error."  Schaffer, 1996 SD 94, at Â¶19, 552 NW2d at 808.
[Â¶22.] Carver claims the trial court erred in giving liability and causation jury instructions that did not clearly state the law.  The liability instruction read:
McKennan Hospital had the duty to provide medical care to Mr. Carver which was commensurate with standard medical care available in the same or similar communities or in hospitals generally.  You may take into consideration the hospitalâs own standards when determining standard of care.  The failure to perform such duty is negligence.
 
Carver alleges McKennan violated its policy that required the bathroom door to be locked when not in immediate use.  Carver argues the trial court erred by failing to clearly instruct that a violation of hospital policy was evidence of negligence.  The  instruction given according to Carver simply advised the jury to consider these policies when determining standard of care.
[Â¶23.] We find no error in the given instruction.  The standard of care to which a hospital must comply is to provide that care which is available at hospitals within the same or similar communities.  Shamburger v. Behrens, 418 NW2d 299, 306 (SD 1988).  Public policy encouraging standards higher than generally employed in the community dictates that individual hospital policies are not determinative of the standard of care.  In this case, testimony revealed that McKennan's bathroom door policy was above the required community standard of care.  Therefore, the given instruction correctly stated the law and allowed the jury to consider the standard of care and balance McKennan's policy with those of the same or similar hospitals in the community.
[Â¶24.] With regard to causation the jury was instructed:
When the expression "proximate cause" is used, it means an immediate cause of any injury, which, in natural or probably sequence, produces the injury complained of.  Without the proximate cause, the injury would not occur.  The proximate cause need not be the only cause, nor the last or nearest cause.  It is sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the injury.
 
For proximate cause to exist, you must find that the harm suffered was a foreseeable consequence of the act complained of.
 
[Â¶25.] We approved this statement of the law in Musch v. H-D Co-op Inc., 487 NW2d 623 (SD 1992).  Carver's contention that the instruction is unclear and confusing is without merit.  The causation instruction correctly stated the law and informed the jury.
ISSUE FOUR
[Â¶26.] Did the trial court err in replacing a juror with an alternate juror?
 
[Â¶27.] Twelve jurors and two alternates[4]  were selected to try this case.  On Friday morning of the first week of trial, a juror was called into chambers with Court and counsel present, to discuss some concerns she had voiced to the bailiff.  This brief colloquy followed:
The Court:        The bailiff indicated to me that you had some concerns that you voiced to him.  Do you want to shareâyou feel comfortable sharing those?
 
Juror:         Yeah, the night before last my brother tried to commit suicide soâI don't think it's going to affect my judgment on this, but I just thought you should know.
 
Counsel for McKennan:   Can we ask?
 
The Court:        Sure.
 
Counsel for McKennan:   I don't want to pry, but where was this?
 
Juror:     Up in northern Minnesota.
 
Counsel for McKennan:   You say "tried."  I'm assuming he was not successful.
 
Juror:    No.
 
Counsel for McKennan:   Is he in the hospital or something now?
 
Juror:     He's in jail right now.
 
Counsel for McKennan:   Okay.  That's all I wanted to know.  Thank you.
 
Counsel for Dr. Hill:     I just want to be sure you are comfortable.
 
Juror:     I mean, it's just hard to talk about right now.
 
Counsel for Dr. Hill:     It would be.  And as long as you're comfortable with it.  But it's not something you have to do if you thinkâ
 
Juror:     I would just as soon stay on, if that would be okay.
 
Counsel for Plaintiff:     I appreciate you bringing that to our attention.
 
The Court:        You did the right thing.  Thank you very much.
 
Juror:     I just wanted to make sure everybody knew about it.
 
The Court:        Okay.
 
(Juror leaves chambers)
 
[Â¶28.] The following Monday, McKennan moved to have the juror replaced by  
alternate.  This motion was taken under advisement by the Court.  At the trial's 
conclusion, the trial judge granted the motion.
[Â¶29.] SDCL 15-6-47(b) provides, in part, that "[A]lternate jurors .  .  .  shall replace jurors who, prior to the time the jury retires to consider the verdict, become or are found to be unable or disqualified to perform their duties.â  There is no case law in South Dakota that lends definition to this rule.  However, when South Dakota adopted this rule in 1939, the same rule existed in both the Federal Rules of Civil and Criminal Procedure.[5]   It is therefore proper to look to federal courts for guidance in determining if the trial court acted appropriately in replacing a seated juror with an alternate under the circumstances of this case.  See State v. Wright, 1999 SD 50, 593 NW2d at 798 fn 4; Sander v. Geib, Elston, Frost Profâl Assân, 506 NW2d 107, 122-23 (SD 1993).
[Â¶30.] Under Rule 24(c) of the Federal Rules of Criminal Procedure, it is well settled that a trial court has broad discretion to replace a juror with an alternate. United States v. Brown, 540 F2d 364, 379 (1976); U.S. v. Gambino, 951 F2d 498, 503 (2nd Cir 1991), cert denied, 504 US 918, 112 SCt 1962, 118 LEd2d 563 (1992); U.S. v. McAnderson, 914 F2d 934 (7th Cir 1990); U.S. v. Corsino, 812 F2d 26, 33 (1st Cir 1987); United States v. Fajardo, 787 F2d 1523 (11th Cir 1986).  That discretion is properly exercised when there are facts presented which convince the trial court that a jurorâs ability to perform his duty is impaired. United States v. Smith, 550 F2d 277, 285, fn1 (1977) (quoting United States v. Cameron, 464 F2d 333, 335 (3rd Cir 1972)), cert denied, 434 US 841, 98 SCt 138, 54 LEd2d 105 (1977).  The trial court's discretion will not be disturbed "absent a showing of bias to the defendant .  .  .  or to any other party."  United States v. Rodriguez, 573 F2d 330, 332 (5th Cir 1978).  Prejudice includes the "[d]ismissal of a juror for want of any factual support, or for a legally irrelevant reason." Id.  573 F2d at 332.
[Â¶31.] Where it is clear that a juror's ability to carry out his duties is impaired, a separate hearing is not required.  A court may assume, for example, if a juror has suffered a heart attack, or received word of a parent's death during trial, or has fallen asleep in open court that the juror is unable to discharge their duties. Green, 715 F2d at 555-58.  Where the juror's impairment is less obvious or less certain, "some hearing or inquiry is appropriate to the proper exercise of judicial discretion."  Id. at 556.
[Â¶32.] This trial focused on the severe brain damage suffered by Perry Carver when his suicide attempt failed.  The duty of the jury was to determine whether the defendants were at fault for the injury to Carver.  In this context the trial court was faced with the question of whether to replace a juror whose brother attempted suicide during the course of the trial.  The trial judge had the opportunity to observe the juror in chambers when she reported the suicide attempt and indicated that it was "hard to talk about" and that she didn't think it would affect her judgment.  Apparently the trial court found the latter representation to lack credibility given the traumatic nature of such an event and the subject matter of the trial.  We concede the trial courtâs superior vantagepoint in judging a juror's credibility.  See United States v. Smith, 918 F2d 1501, 1512 (11th Cir 1990).  We conclude that replacing the juror whose brother attempted suicide during trial with an alternate juror was not an abuse of discretion.
ISSUE FIVE
[Â¶33.] Did McKennan's counsel make unfairly prejudicial statements in its closing argument, thereby requiring a new trial?
 
[Â¶34.] Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial courtâs decision absent a clear showing of abuse of discretion.  Junge v. Jerzak, 519 NW2d 29 (SD 1994).  If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial.  Id., 519 NW2d at 34.  We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.  Id., 519 NW2d at 34.
[Â¶35.] Carver claims McKennan's closing argument was unfairly prejudicial because it contained improper attacks on Carver's counsel and retained expert witnesses.  While Carver admits that its failure to object during McKennan's closing argument generally constitutes a waiver of the issue, Carver nevertheless requests this Court to remedy that waiver by applying South Dakotaâs plain error rule.  
[Â¶36.] In State v. Brammer, 304 NW2d 111, (SD 1981), this Court considered SDCL 23A-44-15[6]  and gave judicial recognition to the plain error rule.  However, "[W]e have recognized the plain error rule, but only in exceptional cases, and then it must be applied cautiously.  The rule does not encompass every error that occurs at trial, but only those errors which are both obvious and substantial."  State v. Shepley, 440 NW2d 294, 298 (SD 1989), State v. Dornbusch, 384 NW2d 682, 686 (SD 1986), State v. Clabaugh, 346 NW2d 448, 452 (SD 1984). 
[Â¶37.] Error does not exist where counsel confines his closing arguments to the facts admitted into evidence and the law of and issues in the case.  Lindsay v. Pettigrew, 3 SD 199, 52 NW 873 (1892); Binegar v. Day, 80 SD 141, 120 NW2d 521, 525 (1963).  In fact, in such context, counsel is to be afforded the "widest latitude" and "great freedom" in the content of closing argument and may properly argue all legitimate inferences from such facts. Id.; Kloppenburg v. Kloppenburg, 66 SD 174, 280 NW 209 (1938).  Upon a complete review of the record, we find that McKennan properly confined closing arguments to the facts admitted into evidence and the law of and issues in the case.  Obviously, where there is no error, the plain error rule can not be applied.
[Â¶38.] We affirm and will not discuss McKennan's notice of review issues.
[Â¶39.] MILLER, Chief Justice, AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.
[Â¶40.] TIMM, Circuit Judge, for SABERS, Justice, disqualified. 

 1.         Spoliation is destruction or significant alteration of evidence, or failure to preserve property for anotherâs use as evidence in pending or reasonably foreseeable litigation.  See West v. Goodyear Tire & Rubber Co., 167 F3d 776, 779 (2d Cir 1999).
 

2.         See Washington v. State, 478 So2d 1028, 1032 (Miss 1985); United States v. Coplon, 185 F2d 629, 637 (2dCir 1950) (holding that a spoliatorâs routine destruction of original records of wire tappings after 30 to 60 days was a reasonable explanation); Stanojev v. Ebasco Servs., Inc., 643 F2d 914, 923 (2dCir 1981) (concluding the employer had offered a reasonable explanation for non-production of documents that were discarded in the course of business); Delchamps, Inc. v. NLRB, 588 F2d 476, 480 n5 (5thCir 1979) (noting that adverse inference rule would not apply when there was no indication wage surveys had been destroyed in bad faith and the surveys were routinely destroyed); Vick v. Texas Employment Commân., 514 F2d 734, 737 (5thCir 1975) (ruling that adverse inference rule would not apply when records were destroyed under routine procedures without bad faith); Berthold-Jennings Lumber Co. v. St. Louis, I.M. & S. RY. Co., 80 F2d 32, 42 (8thCir 1935) (ruling there was no evidence of willful, intentional, or fraudulent destruction of records where it was normal business procedure for accumulated files to be destroyed every five years); see also 29 AmJur2d Evidence Â§ 244 (1980) (stating that an adverse presumption or inference does not arise where the destruction of evidence was âa matter of routine with no fraudulent intent.â).
 

 3.         Recently an appeal was filed with this Court in Citibank v.  State of South Dakota #21618 (1998).  Although the parties ultimately dismissed this appeal by stipulation, the stipulated facts stated that the Citibank operations in Sioux Falls contain approximately twenty million Visa and MasterCard credit card accounts.
 

 4.         SDCL 15-6-47(b) ensures that alternate jurors who replace seated jurors are equally qualified to meet juror obligations.  Alternate jurors are drawn in the same manner, have the same qualifications, are subject to the same examination and challenges, take the same oath, and have the same functions as regular jurors. 
 

 5.         Prior to the 1991 amendment of Federal Rules of Civil Procedure 47(b) and the 1999 amendment of Federal Rules of Criminal Procedure 24(c), the rules read identical to SDCL 15-6-47(b).  

 6.         SDCL Â§ 23A-44-15. (Rule 52 (b)) states "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court."