1999 SD 15

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Rodney Joseph SHADBOLT, Defendant and Appellant.**

No. 20308.

Supreme Court of South Dakota.

Argued Oct. 20, 1998.

Decided Feb. 3, 1999.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, for plaintiff and appellee.

Carmen Means, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Rodney Shadbolt (Shadbolt) appeals his conviction for aggravated assault. We affirm.

## FACTS

[¶ 2.] Shadbolt was self-employed as a private investigator. One of the services he performed as an investigator was to contract with bail bondsman in the Sioux Falls area to help locate and apprehend people who were out on bond and failed to appear in court. However, Shadbolt was not licensed as a bail bondsman or "runner" to perform such services.

[¶ 3.] On December 12, 1996, Jody Oppold secured a $300 bond from bail bondsman, Vince Davi. She subsequently failed to appear in court. On December 31, 1996, a warrant was issued for her arrest.

[¶ 4.] Davi immediately contacted Shadbolt to have Oppold apprehended for violating the terms of her bail. From December through February, Shadbolt attempted to locate Oppold at various locations, including the address given on the booking card, various motels, bars, and a truck stop. All attempts were to no avail.

[¶ 5.] On Saturday, February 22, 1997, Davi received a telephone number where Oppold could be reached from Oppold's ex-husband. That same day, Davi gave the number to Shadbolt, but told him to wait until Monday before acting on the information so that Davi could check on the validity of the warrant. Notwithstanding this request, Shadbolt and an associate, Tim Amundson,[1] went to locate Oppold during the evening of February 22, 1997. Acting on a tip from a local law enforcement officer, Shadbolt and Amundson went to Tom Dossett's residence. Shadbolt and Amundson approached the back door and were met by Dossett, Oppold's fiancé. Shadbolt informed Dossett he had a warrant for Oppold's arrest. A confrontation ensued between Shadbolt and Dossett. Dos-

sett pushed Shadbolt. Shadbolt then pulled his gun, pointed it at Dossett and told Dossett to back up, "or I'm going to put a cap in your ass."

[¶ 6.] Prior to this encounter, Shadbolt had not checked the validity of the warrant and was unaware it had been canceled the day prior, February 21, 1997. Thereafter, Oppold agreed to accompany Shadbolt and Amundson to the police station.

[¶ 7.] Shadbolt was charged and convicted of aggravated assault. He was sentenced to five years in the penitentiary and received a fine of $500.

[¶ 8.] Shadbolt appeals his conviction, raising the following issues:

1. Whether the trial court erred in refusing to instruct the jury on the power of a bail bondsman to use reasonable means to arrest a person who obtained bail and subsequently failed to appear at a scheduled hearing.

2. Whether trial court erred in admitting evidence that the warrant which Mr. Shadbolt was acting on was no longer valid.

## STANDARD OF REVIEW

[¶ 9.] We review a trial court's refusal to give a requested jury instruction as follows:

On issues supported by competent evidence in the record, the trial court should instruct the jury. The trial court is not required to instruct on issues lacking support in the record. Failure to give a requested instruction that correctly sets forth the law is prejudicial error. Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury. Error is not reversible unless it is prejudicial. The burden of demonstrating prejudice in failure to give a proposed instruction is on the party contending the error.

*Sundt v. State, Dep't of Transp.*, 1997 SD 91, ¶ 19, 566 N.W.2d 476, 480 (quoting *Kuper v. Lincoln–Union Elec. Co.*, 1996 SD 145, ¶ 32,

---

1. No relation to the author of this opinion.

557 N.W.2d 748, 758) (internal citations omitted).

[¶ 10.] Questions of law, including statutory construction, are reviewed under a de novo standard, giving no deference to the trial court. *Engelhart v. Kramer*, 1997 SD 124, ¶ 8, 570 N.W.2d 550, 552 (citing *West Two Rivers Ranch v. Pennington County*, 1996 SD 70, ¶ 6, 549 N.W.2d 683, 685).

## DECISION

[¶ 11.] Whether Shadbolt was entitled to an instruction on authority of bail bondsman to use reasonable force.

[¶ 12.] " 'A trial court must present only those instructions to the jury which are supported by competent evidence and set forth the applicable law.' " *Sundt*, 1997 SD 91, ¶ 22, 566 N.W.2d at 481 (quoting State v. Johnson, 320 N.W.2d 142, 147 (S.D.1982)). Shadbolt claims he was entitled to a jury instruction to the effect that he was authorized as an agent of a bail bondsman to use reasonable force to arrest Oppold. State argues that the common-law authority of a surety to hire an agent has been limited in South Dakota through licensing statutes. Therefore, State argues Shadbolt did not have any authority or right under the law to act as Davi's agent and consequently is not entitled to an instruction regarding a bail bondsman's authority. The trial court agreed and denied Shadbolt's request for an instruction regarding a bail bondsman's authority to use reasonable force and only instructed as to self-defense. The trial court determined, as a matter of law, common-law right of a bail bondsman to delegate his authority to an unlicensed agent has been abrogated by South Dakota licensing statutes. *See Moncrief v. State, Comm'r of Ins.*, 415 So.2d 785, 788 (Fla.Dist.Ct.App.1982) (holding the common-law right of bail bondsman to delegate his authority to an unli-

censed agent has been abrogated by Florida statute and upholding imposition of penalty by insurance division).

[¶ 13.] As a general precept, common law is in force, except where it conflicts with the will of the sovereign power as expressed through the constitution, statutory enactments, and ordinances. SDCL 1–1–23, 1–1–24. *See also McKellips v. Mackintosh*, 475 N.W.2d 926, 929 (S.D.1991). Where a statute is in derogation of common law, it should be "liberally construed with a view to effect its objects and to promote justice." SDCL 2–14–12.

[¶ 14.] At common law, the authority of a bail bondsman to arrest the principal could be freely delegated to an agent. *Taylor v. Taintor*, 83 U.S. (16 Wall) 366, 21 L.Ed. 287 (1872).[2] Shadbolt relies on dictum in *Taylor* for broadly construing the authority of a bail bondsman's agent. *Taylor* states:

> When bail is given, the principal [defendant] is regarded as delivered to the custody of his sureties [bail bondsman]. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose.

*Taylor*, 83 U.S. (16 Wall) at 371, 21 L.Ed. at 290.

[¶ 15.] While *Taylor* granted broad authority for a surety to delegate arrest power to an agent, it did not preclude later statutory enactments from regulating how that authority was to be delegated. *See Green v. State*, 829 S.W.2d 222, 223 (Tex.

2. The facts of *Taylor* are different from the present facts. In *Taylor*, custody was relinquished after bail bondsman had posted bail for defendant in Connecticut court. The defendant subsequently failed to appear and fled to New York. New York seized defendant and delivered him to Maine where he was tried, convicted and imprisoned for a separate offense under that state's law. A suit was later instituted in Connecticut by the bondsman to recover the amount of the bond posted, claiming impossibility of performance by act of law. The Supreme Court held the fact the defendant was in jail in another state did not excuse inability of bail bondsman to produce defendant in Connecticut court, thus, forfeiture of bond was proper. *Taylor*, 83 U.S. (16 Wall) at 374, 21 L.Ed. at 291.

Crim.App.1992) (recognizing that *Taylor* is no longer the law in Texas, and stating: "Statutory guidelines have replaced the common law in Texas and define the law as it applies to sureties who seek to apprehend principals.") (citations omitted). It is generally recognized that "where a statute provides the manner in which the power of arrest may be delegated by the bail bondsman, that provision must be followed or the rearrest is invalid." 8 AmJur2d *Bail and Recognizance* § 120 (1980).

[¶ 16.] Shadbolt requested an instruction based on SDCL 23A–43–29, which provides a surety with the authority to arrest a principal when the principal fails to appear in court. SDCL 23A–43–29 provides:

Any defendant who is released on the execution of an appearance bail bond with one or more sureties may, if he violates the conditions of his release, in vacation, be arrested by his surety, delivered to a law enforcement officer, and brought before any committing magistrate. At the request of such surety, the committing magistrate shall recommit the defendant to the custody of the law enforcement officer, and endorse on the recognizance, or certified copy thereof, the discharge and exoneretur of the surety. The person so committed shall be held in custody until discharged by due course of law.

However, the power to delegate authority to an agent is limited through a licensing statute. At the time of trial, SDCL 58–22–4 provided:

No person shall act in the capacity of a bail bondsman or runner or perform any of the functions, duties or powers prescribed for bail bondsmen or runners under the provisions of this chapter; provided, however, that none of the provisions of this section shall prohibit any individual, from pledging real or other property as security for a bail bond in judicial proceedings and who does not receive, or is not promised, money or other things of value therefor. Violation of this section is a Class 2 misdemeanor.

Under the licensing scheme, a "runner" is defined under SDCL 58–22–1:

(5) "Runner" shall mean a person employed by a bail bondsman for the purpose of assisting the bail bondsman in presenting the defendant in court when required or to assist in apprehension and surrender of defendant to the court, or keeping defendant under necessary surveillance. This does not affect the right of a bail bondsman to hire counsel or to ask assistance of law enforcement officers.

Furthermore, under SDCL 58–22–12(3) and (4):

In addition to the requirements prescribed in §§ 58–22–5 [licenses to be granted only to individuals] and 58–22–14 [application procedure and agency investigation into applicant's fitness], an applicant for a license to serve as a runner must affirmatively show:

\*　　\*　　\*　　\*　　\*　　\*

(3) That the applicant will be employed by only one bail bondsman, who will supervise the work of the applicant, and be responsible for the runner's conduct in the bail bond business; and

(4) The application must be endorsed by the appointing bail bondsman, who shall obligate himself to supervise the runner's activities in his behalf.

[¶ 17.] States have a legitimate interest in regulating the business of bondsmen, which is generally deemed too clear for argument. *See Summit Fidelity & Surety Co. of Akron, Ohio v. Nimtz*, 158 Neb. 762, 64 N.W.2d 803, 807 (Neb 1954); *State v. Schiele*, 85 Ohio App. 356, 88 N.E.2d 215, 217 (1949); 8 AmJur2d *Bail and Recognizance* § 8 (1980). Since 1966, South Dakota has regulated the business of a bondsman through licensing requirements set out in SDCL 58–22–4. "When the language of the statute is clear, certain, and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute." *In re Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D.1984) (citations omitted).

[¶ 18.] The statute required an agent functioning as Shadbolt to be licensed. Shadbolt was not licensed as required by statute, in fact, he did not even qualify under the stat-

ute to be licensed as a runner.[3] Bail bondsman, Davi, testified he did not supervise Shadbolt nor have any control over him, contrary to statutes requiring bail bondsman to be in control.[4] Shadbolt failed to comply with the regulatory provisions in place. Consequently, he had no authority to act as an unlicensed agent and cannot now claim protection of a statute contingent upon such authority.

[¶ 19.] The trial court did not err in refusing to give the requested instruction. Shadbolt's remaining issue is without merit.

[¶ 20.] Affirmed.

[¶ 21.] MILLER, Chief Justice, SABERS, KONENKAMP, and GILBERTSON, Justices, concur.

3.  SDCL 58–22–12(3) and(4) require a runner to be employed by only one bail bondsman. However, Shadbolt contracted his services out to various companies. At trial, Davi testified:

    Rod supplies a service not only to my company but other bail companies in the town of Sioux Falls and surrounding community. We have a flat percentage that we pay anyone who brings someone in depending on the amount of bond. Fifty is the least that you are going to get.

4.  Davi testified:

    I said on cross he can do whatever he felt he wanted to do because he was an independent. Just because I said to him wait until Monday, he should have, there is no doubt in my mind. That doesn't mean it's an absolute. I don't have control of that.