2000 SD 151

George WUEST as Guardian Ad Litem for Perry CARVER, Plaintiff and Appellant,

and

Shirley Carver, individually and as Guardian Ad Litem for Jesse Carver and Tina Wilson, Plaintiff,

v.

McKENNAN HOSPITAL, a South Dakota Corporation, Defendant and Appellee,

and

Laurie M. Hill, M.D., and Bernie Bahnson, M.D. and Central Plains Clinic, Ltd., Defendants.

Nos. 20905, 20914.

Supreme Court of South Dakota.

Argued March 21, 2000.

Decided Dec. 6, 2000.

Michael A. Wilson of Quinn, Day & Barker, Rapid City, SD, Attorneys for appellant Wuest.

James E. McMahon and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD, Attorneys for appellee McKennan Hospital.

TIMM, Circuit Judge

[¶ 1.] Perry Carver's guardian ad litem, George Wuest, and Shirley Carver (collectively Carver) filed suit against McKennan Hospital (McKennan) and Perry Carver's physicians alleging medical negligence. The claim centered on McKennan's staffing policies and whether Carver's bathroom door should have been locked. The case was tried before a jury which returned a verdict in favor of all defendants. Carver now appeals only the verdict in favor of McKennan. We affirm on all issues.

### FACTS

[¶ 2.] On the afternoon of November 19, 1993, Perry Carver walked into the Sioux Falls police station, claiming he was suicidal. Police officers transported him to McKennan's emergency room, where he was immediately admitted into the hospital's Acute Adult Unit on a 24 hour mental illness hold. He was diagnosed with depression, suicidal thoughts and alcohol intoxication.

[¶ 3.] At 6:00 p.m., a nurse in the Acute Adult Unit assessed Carver who continued to express suicidal tendencies. Later that evening, another nurse heard a loud noise in Carver's room. Upon investigating, she found a chair lying on its side and Carver sitting on his bed. He had removed his hospital gown, torn it into pieces and tied them back together. Carver told the nurse that if the chair had not slipped, he would have been dead by the time she found him. The nurse viewed this incident as a suicide attempt and, after consulting with Carver's physician, imposed a continuous one-to-one observation over him. The one-on-one observation continued until 11:30 p.m., when the observing nurse's shift ended. After that time, Carver was checked every 15 minutes. In addition, the nurse on duty positioned her chair so that she could see into his room. Carver slept for the remainder of the night.

[¶ 4.] At 7:00 a.m., on November 20th, the morning shift arrived for duty. The staff continued making 15 minute observations of Carver. At 8:00 a.m., Carver again expressed suicidal tendencies to a nurse. She encouraged him to take a shower, because she believed that he would feel much better if he cleaned up. The bathroom door in Carver's room was unlocked in order to allow him to clean up. At approximately 8:45 a.m., a psychiatrist went into Carver's room to conduct an assessment of his condition. When the doctor finished, he left the room, entered a room near the nurse's station, and began writing his report.

[¶ 5.] The nurse did not see the psychiatrist leave Carver's room. After she noticed him writing his report, she went to check on Carver. At 8:59 a.m., she discovered him in his bathroom, hanging by his robe. He was not breathing and his heart had stopped. He was resuscitated, but by then had suffered severe, permanent brain damage. Carver currently resides in a nursing home.

[¶ 6.] On appeal, Carver raises the following issues:

Did the trial court err by refusing to instruct the jury on the adverse inference rule?

Did the trial court err by refusing to instruct the jury on the doctrine of res ipsa loquitur?

Did the trial court fail to clearly instruct the jury regarding liability and causation?

Did the trial court err in replacing a juror with an alternate juror?

Did McKennan's counsel make unfairly prejudicial statements in its closing argument, thereby requiring a new trial?

### ISSUE ONE

[¶ 7.] **Did the trial court err by refusing to instruct the jury on the adverse inference rule?**

[¶ 8.] This Court reviews a trial court's refusal of an instruction under the abuse of discretion standard. *State v.*

*Wright,* 1999 SD 50, 593 N.W.2d 792. To establish error, the appellant must establish that the proffered instruction was a correct statement of the law applicable to the facts. *Schaffer v. Edward D. Jones & Co.,* 1996 SD 94, ¶ 19, 552 N.W.2d 801, 808. In addition, it must be established that the "jury might and probably would have returned a different verdict if the proposed instruction had been given." *Bauman v. Auch,* 539 N.W.2d 320, 323 (S.D. 1995).

■■ [¶ 9.] During the course of jury instruction settlement, Carver requested an instruction on the adverse inference rule. Carver claims he was entitled to the adverse inference instruction because McKennan destroyed the policy regulating staff to patient ratios for the Acute Adult Unit after Carver hung himself. More significantly, Carver claims McKennan destroyed the policy in spite of knowledge that staffing issues were critical in the events leading to Carver's hanging. Carver claims such conduct amounted to spoliation[1] and that an adverse inference instruction is appropriate when a party commits spoliation.

[¶ 10.] McKennan asserts that the policy was destroyed as a matter of business routine after Carver's hanging, but prior to the commencement of this lawsuit. It argues that since the destruction was due to a matter of routine procedure, the adverse inference instruction was not appropriate.

In South Dakota, we recognize and use the "adverse inference rule." This rule provides that if a party has evidence under its control and does not present that evidence, an inference may be drawn that the evidence would not support that party's claim. *Amert v. Lake County Bd. of Equalization,* 1998 SD 66, ¶ 28, 580 N.W.2d 616, 621 (quoting *Sabhari v. Sapari,* 1998 SD 35, ¶ 14, 576 N.W.2d 886, 891, n. 6 (quoting *Matters v. Custer County,* 538 N.W.2d 533, 536

(S.D.1995))). *See also Klinker v. Beach,* 1996 SD 56 ¶ 15, 547 N.W.2d 572, 576, n. 2 (stating that because a relevant document was not offered in support of any claims made by the plaintiff, the court will "assume it would not provide such support")(citing *Matters,* 538 N.W.2d at 536).

*In re Estate of Klauzer,* 2000 SD 7, ¶ 17, 604 N.W.2d 474, 478.

■ [¶ 11.] The burden was on the spoliator, McKennan, to show it acted in a non-negligent, good faith manner in destroying the document sought. An adverse inference is not automatic, it simply creates a presumption that the evidence sought would be unfavorable to the spoliator. *See DeLaughter,* 601 So.2d at 823 (finding that the adverse inference instruction failed to inform the jury that the hospital had the burden to show it did not destroy or misplace the hospital record); 29 Am.Jur.2d *Evidence* § 244 (1980) (stating any presumption that arises from the spoliation of evidence is rebuttable and open to explanation). The spoliator must provide an explanation for the disappearance of any documentary evidence. A duty is imposed upon a hospital such as McKennan to give an "adequate explanation for the absence of the [staffing procedure policy]." *DeLaughter,* 601 So.2d at 821. "Therefore, the jury was entitled to be told why the [staffing procedure policy] was missing, ... a relevant fact." *Id.*

■ [¶ 12.] The trial court, as gatekeeper of evidence, must use its discretion in deciding whether an adverse inference instruction should be given. The *DeLaughter* court explained:

As with any other evidence, the explanation for the original record's absence may be fully satisfying either that it was lost through no fault of the hospital, that the hospital deliberately destroyed it, or as in most cases, somewhere in between,

---

**1.** Spoliation is destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending

or reasonably foreseeable litigation. *See West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999).

thereby making it a jury issue. For example, where the evidence is positive that the hospital had been destroyed by fire, such circumstance would adequately account for the loss of the original medical record without fault attributable to the hospital, and there would be no reason for the jury to be instructed on a presumption or inference arising from the loss.

*Id.* But if the trial court concludes the spoliator maliciously destroyed the document, it is unavailable because of negligence, or for some other reason evidencing a lack of good faith, the jury should be given an adverse inference instruction. *Id.* at 822. The jury must then determine if the explanation given is reasonable, and if it finds it is reasonable, then the jury may not infer the missing document contained unfavorable information to the opposing party. *Id.*

■ [¶ 13.] One factor to consider in determining whether a spoliator acted in good faith is an explanation that the evidence sought was destroyed as part of routine destruction in the course of business. McKennan asserts that its policy regulating staff to patient ratios for the Acute Adult Unit was updated as a matter of annual business routine. Many courts provide a safe harbor for a party who destroys a document before litigation commences if the destruction was done in the ordinary course of business, which indicates a degree of good faith so that an adverse inference should not be drawn. Scott M. Kline, *Advising Clients on the Destruction of Documents Prepared and Used to Formulate Discovery Responses: Perils and Pitfalls,* 11 Rev.Litig. 47 (Winter 1991).[2]

■ [¶ 14.] Allowing a defendant business such as McKennan to offer the routine or formal document destruction policy as an explanation for loss of evidence is simply realistic for many companies, especially large corporations who cannot as a practical matter afford the time or expense to retain every single document involved in its business.[3] If a trial court deems an adverse inference instruction is necessary for the jury, then it will be up to the jury to decide whether a defendant's explanation for loss or destruction of documentary evidence due to bad faith, negligence or routine destruction warrants an adverse inference against the defendant.

■ [¶ 15.] Even if it was an abuse of discretion to fail to instruct the jury on the adverse inference rule, it was harmless error based on this Court's resolution of Issue Three. The appropriate standard of care to which a hospital must comply is primarily "that care which is available at

2. *See Washington v. State,* 478 So.2d 1028, 1032 (Miss.1985); *United States v. Coplon,* 185 F.2d 629, 637 (2dCir.1950) (holding that a spoliator's routine destruction of original records of wire tappings after 30 to 60 days was a reasonable explanation); *Stanojev v. Ebasco Servs., Inc.,* 643 F.2d 914, 923 (2dCir.1981) (concluding the employer had offered a reasonable explanation for non-production of documents that were discarded in the course of business); *Delchamps, Inc. v. NLRB,* 588 F.2d 476, 480 n. 5 (5th Cir.1979) (noting that adverse inference rule would not apply when there was no indication wage surveys had been destroyed in bad faith and the surveys were routinely destroyed); *Vick v. Texas Employment Comm'n.,* 514 F.2d 734, 737 (5th Cir.1975) (ruling that adverse inference rule would not apply when records were destroyed under routine procedures without bad faith); *Berthold–Jennings Lumber Co. v.* *St. Louis, I.M. & S. RY. Co.,* 80 F.2d 32, 42 (8th Cir.1935) (ruling there was no evidence of willful, intentional, or fraudulent destruction of records where it was normal business procedure for accumulated files to be destroyed every five years); *see also* 29 Am. Jur.2d *Evidence* § 244 (1980) (stating that an adverse presumption or inference does not arise where the destruction of evidence was "a matter of routine with no fraudulent intent.").

3. Recently an appeal was filed with this Court in *Citibank v. State of South Dakota* # 21618 (1998). Although the parties ultimately dismissed this appeal by stipulation, the stipulated facts stated that the Citibank operations in Sioux Falls contain approximately twenty million Visa and MasterCard credit card accounts.

hospitals within the same or similar communities." *Shamburger v. Behrens,* 418 N.W.2d 299, 306 (S.D.1988). In this case, claims that the applicable standard of care can be established by the hospital's internal policies are marginal. For this reason, Carver failed in his burden of establishing that the "jury might and probably would have returned a different verdict if the proposed instruction had been given." *Bauman,* 539 N.W.2d at 323.

## ISSUE TWO

[¶ 16.] **Did the trial court err by refraining from instructing the jury on the doctrine of res ipsa loquitur?**

[¶ 17.] During the course of jury instruction settlement Carver requested an instruction on res ipsa loquitur. Carver claims the proposed instruction was supported by the facts in the record. We do not agree.

[¶ 18.] In *Van Zee v. Sioux Valley Hospital,* 315 N.W.2d 489, 492 (S.D.1982) this Court stated:

> The three essential elements which must be present to warrant application of the doctrine of res ipsa loquitur are: (1) the instrumentality which caused the injury must have been under the full management and control of the defendant or his servants; (2) the accident was such that, according to knowledge and experience, does not happen if those having management or control had not been negligent; and (3) the plaintiff's injury must have resulted from the accident. *Fleege v. Cimpl,* 305 N.W.2d 409 (S.D.1981); *Kramer v. Sioux Transit, Inc.,* 85 S.D. 232, 180 N.W.2d 468 (1970). Also, the doctrine of res ipsa loquitur is to be utilized sparingly and only when the facts and demands of justice make its application essential. *Shipley v. City of Spearfish,* 89 S.D. 559, 235 N.W.2d 911 (1975); *Barger v. Chelpon,* 60 S.D. 66, 243 N.W. 97 (1932).
>
> In cases involving medical negligence, which is the cause of action pleaded

here, an additional element is required for the doctrine of res ipsa loquitur to be applied: namely, negligence must be established by the testimony of medical experts, unless the kind of negligence involved is within the realm of laymanistic comprehension. *Block v. McVay,* 80 S.D. 469, 126 N.W.2d 808 (1964); *Lundgren v. Minty,* 64 S.D. 217, 266 N.W. 145 (1936); *Bennett v. Murdy,* 61 S.D. 471, 249 N.W. 805 (1933); *Myrlie v. Hill,* 58 S.D. 330, 236 N.W. 287 (1931).

[¶ 19.] Carver's own experts testified that suicides occur in hospitals and that patients commit suicide in the absence of a hospital's or physician's negligence. Carver failed to establish that the suicide attempt was such that, according to knowledge and experience, does not happen if those having management or control had not been negligent. Therefore, the proposed instruction was not supported by the facts and was properly refused.

## ISSUE THREE

[¶ 20.] **Did the trial court fail to clearly instruct the jury regarding liability and causation?**

[¶ 21.] Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury. *Sommervold v. Grevlos,* 518 N.W.2d 733, 739 (S.D.1994). However, "misleading, conflicting, or confusing instructions create reversible error." *Schaffer,* 1996 SD 94, at ¶ 19, 552 N.W.2d at 808.

[¶ 22.] Carver claims the trial court erred in giving liability and causation jury instructions that did not clearly state the law. The liability instruction read:

> McKennan Hospital had the duty to provide medical care to Mr. Carver which was commensurate with standard medical care available in the same or similar communities or in hospitals generally. You may take into consideration the hospital's own standards when determining standard of care. The failure to perform such duty is negligence.

Carver alleges McKennan violated its policy that required the bathroom door to be locked when not in immediate use. Carver argues the trial court erred by failing to clearly instruct that a violation of hospital policy was evidence of negligence. The instruction given according to Carver simply advised the jury to consider these policies when determining standard of care.

[¶ 23.] We find no error in the given instruction. The standard of care to which a hospital must comply is to provide that care which is available at hospitals within the same or similar communities. *Shamburger v. Behrens*, 418 N.W.2d 299, 306 (S.D.1988). Public policy encouraging standards higher than generally employed in the community dictates that individual hospital policies are not determinative of the standard of care. In this case, testimony revealed that McKennan's bathroom door policy was above the required community standard of care. Therefore, the given instruction correctly stated the law and allowed the jury to consider the standard of care and balance McKennan's policy with those of the same or similar hospitals in the community.

[¶ 24.] With regard to causation the jury was instructed:

When the expression "proximate cause" is used, it means an immediate cause of any injury, which, in natural or probable sequence, produces the injury complained of. Without the proximate cause, the injury would not occur. The proximate cause need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the injury.

For proximate cause to exist, you must find that the harm suffered was a foreseeable consequence of the act complained of.

4. SDCL 15-6-47(b) ensures that alternate jurors who replace seated jurors are equally qualified to meet juror obligations. Alternate jurors are drawn in the same manner, have

[¶ 25.] We approved this statement of the law in *Musch v. H–D Co-op. Inc.*, 487 N.W.2d 623 (S.D.1992). Carver's contention that the instruction is unclear and confusing is without merit. The causation instruction correctly stated the law and informed the jury.

## ISSUE FOUR

[¶ 26.] **Did the trial court err in replacing a juror with an alternate juror?**

[¶ 27.] Twelve jurors and two alternates [4] were selected to try this case. On Friday morning of the first week of trial, a juror was called into chambers with Court and counsel present, to discuss some concerns she had voiced to the bailiff. This brief colloquy followed:

The Court: The bailiff indicated to me that you had some concerns that you voiced to him. Do you want to share—you feel comfortable sharing those?

Juror: Yeah, the night before last my brother tried to commit suicide so—I don't think it's going to affect my judgment on this, but I just thought you should know.

Counsel for McKennan: Can we ask?

The Court: Sure.

Counsel for McKennan: I don't want to pry, but where was this?

Juror: Up in northern Minnesota.

Counsel for McKennan: You say "tried." I'm assuming he was not successful.

Juror: No.

Counsel for McKennan: Is he in the hospital or something now?

Juror: He's in jail right now.

Counsel for McKennan: Okay. That's all I wanted to know. Thank you.

Counsel for Dr. Hill: I just want to be sure you are comfortable.

Juror: I mean, it's just hard to talk about right now.

the same qualifications, are subject to the same examination and challenges, take the same oath, and have the same functions as regular jurors.

Counsel for Dr. Hill: It would be. And as long as you're comfortable with it. But it's not something you have to do if you think—

Juror: I would just as soon stay on, if that would be okay.

Counsel for Plaintiff: I appreciate you bringing that to our attention.

The Court: You did the right thing. Thank you very much.

Juror: I just wanted to make sure everybody knew about it.

The Court: Okay.

(Juror leaves chambers)

[¶ 28.] The following Monday, McKennan moved to have the juror replaced by alternate. This motion was taken under advisement by the Court. At the trial's conclusion, the trial judge granted the motion.

[¶ 29.] SDCL 15–6–47(b) provides, in part, that "[A]lternate jurors ... shall replace jurors who, prior to the time the jury retires to consider the verdict, become or are found to be unable or disqualified to perform their duties." There is no case law in South Dakota that lends definition to this rule. However, when South Dakota adopted this rule in 1939, the same rule existed in both the Federal Rules of Civil and Criminal Procedure.[5] It is therefore proper to look to federal courts for guidance in determining if the trial court acted appropriately in replacing a seated juror with an alternate under the circumstances of this case. *See State v. Wright*, 1999 SD 50, 593 N.W.2d at 798 fn. 4; *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 122–23 (S.D.1993).

[¶ 30.] Under Rule 24(c) of the Federal Rules of Criminal Procedure, it is well settled that a trial court has broad discretion to replace a juror with an alternate. *United States v. Brown*, 540 F.2d 364, 379 (1976); *U.S. v. Gambino*, 951 F.2d 498, 503 (2nd Cir.1991), *cert. denied*, 504 U.S. 918, 112 S.Ct. 1962, 118 L.Ed.2d

563 (1992); *U.S. v. McAnderson*, 914 F.2d 934 (7th Cir.1990); *U.S. v. Corsino*, 812 F.2d 26, 33 (1st Cir.1987); *United States v. Fajardo*, 787 F.2d 1523 (11th Cir.1986). That discretion is properly exercised when there are facts presented which convince the trial court that a juror's ability to perform his duty is impaired. *United States v. Smith*, 550 F.2d 277, 285, fn. 1 (1977) (quoting *United States v. Cameron*, 464 F.2d 333, 335 (3rd Cir.1972)), *cert. denied*, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977). The trial court's discretion will not be disturbed "absent a showing of bias to the defendant ... or to any other party." *United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir.1978). Prejudice includes the "[d]ismissal of a juror for want of any factual support, or for a legally irrelevant reason." *Id.* 573 F.2d at 332.

[¶ 31.] Where it is clear that a juror's ability to carry out his duties is impaired, a separate hearing is not required. A court may assume, for example, if a juror has suffered a heart attack, or received word of a parent's death during trial, or has fallen asleep in open court that the juror is unable to discharge their duties. *Green*, 715 F.2d at 555–58. Where the juror's impairment is less obvious or less certain, "some hearing or inquiry is appropriate to the proper exercise of judicial discretion." *Id.* at 556.

[¶ 32.] This trial focused on the severe brain damage suffered by Perry Carver when his suicide attempt failed. The duty of the jury was to determine whether the defendants were at fault for the injury to Carver. In this context the trial court was faced with the question of whether to replace a juror whose brother attempted suicide during the course of the trial. The trial judge had the opportunity to observe the juror in chambers when she reported the suicide attempt and indicated that it

---

**5.** Prior to the 1991 amendment of Federal Rules of Civil Procedure 47(b) and the 1999 amendment of Federal Rules of Criminal Pro-

cedure 24(c), the rules read identical to SDCL 15–6–47(b).

was "hard to talk about" and that she didn't think it would affect her judgment. Apparently the trial court found the latter representation to lack credibility given the traumatic nature of such an event and the subject matter of the trial. We concede the trial court's superior vantagepoint in judging a juror's credibility. *See United States v. Smith*, 918 F.2d 1501, 1512 (11th Cir.1990). We conclude that replacing the juror whose brother attempted suicide during trial with an alternate juror was not an abuse of discretion.

## ISSUE FIVE

[¶ 33.] **Did McKennan's counsel make unfairly prejudicial statements in its closing argument, thereby requiring a new trial?**

[¶ 34.] Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. *Junge v. Jerzak*, 519 N.W.2d 29 (S.D.1994). If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. *Id.*, 519 N.W.2d at 34. We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion. *Id.*, 519 N.W.2d at 34.

[¶ 35.] Carver claims McKennan's closing argument was unfairly prejudicial because it contained improper attacks on Carver's counsel and retained expert witnesses. While Carver admits that its failure to object during McKennan's closing argument generally constitutes a waiver of the issue, Carver nevertheless requests this Court to remedy that waiver by applying South Dakota's plain error rule.

[¶ 36.] In *State v. Brammer*, 304 N.W.2d 111, (S.D.1981), this Court considered SDCL 23A–44–15 [6] and gave judicial recognition to the plain error rule. However, "[W]e have recognized the plain error rule, but only in exceptional cases, and then it must be applied cautiously. The rule does not encompass every error that occurs at trial, but only those errors which are both obvious and substantial." *State v. Shepley*, 440 N.W.2d 294, 298 (S.D.1989), *State v. Dornbusch*, 384 N.W.2d 682, 686 (S.D.1986), *State v. Clabaugh*, 346 N.W.2d 448, 452 (S.D.1984).

[¶ 37.] Error does not exist where counsel confines his closing arguments to the facts admitted into evidence and the law of and issues in the case. *Lindsay v. Pettigrew*, 3 S.D. 199, 52 N.W. 873 (1892); *Binegar v. Day*, 80 S.D. 141, 120 N.W.2d 521, 525 (1963). In fact, in such context, counsel is to be afforded the "widest latitude" and "great freedom" in the content of closing argument and may properly argue all legitimate inferences from such facts. *Id.; Kloppenburg v. Kloppenburg*, 66 S.D. 174, 280 N.W. 209 (1938). Upon a complete review of the record, we find that McKennan properly confined closing arguments to the facts admitted into evidence and the law of and issues in the case. Obviously, where there is no error, the plain error rule can not be applied.

[¶ 38.] We affirm and will not discuss McKennan's notice of review issues.

[¶ 39.] MILLER, Chief Justice, AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 40.] TIMM, Circuit Judge, for SABERS, Justice, disqualified.

---

6. SDCL § 23A–44–15. (Rule 52(b)) states "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court."