2001 SD 54

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Thomas D. RED STAR, Defendant and Appellant.**

No. 21309.

Supreme Court of South Dakota.

Argued Nov. 28, 2000.

Decided May 2, 2001.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, for plaintiff and appellee.

Lelia L. Hood, Pierre, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Thomas Red Star was convicted of first-degree burglary and attempted second-degree rape. We affirm in part, reverse in part and remand.

## FACTS

[¶ 2.] On July 1, 1998, Thomas Red Star accompanied a friend to a house party in Pierre, South Dakota. The party took place inside an apartment within an apartment complex, where Shannon Spears resided. At the party, alcohol was consumed until the early morning hours. Because of the hour, Red Star and his friend were asked to leave the apartment, as they were the only remaining guests. Red Star and his friend amicably left Spears' apartment and proceeded to another apartment down the hall where his friend resided.

[¶ 3.] According to Spears' testimony, on July 2, 1998, between the time of 3 a.m. and 4 a.m., Red Star gained entrance to her apartment by way of a balcony. Once inside, Red Star allegedly attempted to rape Spears, as she lie asleep. Before Red Star could consummate his mission, Spears awoke and chased Red Star from her apartment. Spears' boyfriend, Antonio Garcia, also awoke as he was lying on the same bed as Spears, and chased and physically assaulted Red Star due to Red Star's contact with his girlfriend.

[¶ 4.] Red Star came to the attention of police around 6 a.m. when he was sighted near the Pierre Water Department facility. The first officer at the scene noticed that Red Star had a bloody nose and swollen lip. The officer asked Red Star what had happened. Red Star responded that he had been assaulted. After being transported to the apartment complex, Red Star identified his assailant walking outside. The officer inquired of Antonio Garcia regarding the assault. Garcia responded to the inquiry by advising the officer that Red Star had raped his girlfriend.

[¶ 5.] After further investigation, Red Star was charged with attempted second-degree rape in violation of SDCL 22–4–1 and 22–22–1(4), and first-degree burglary in violation of SDCL 22–32–1. In the first trial, on August 17, 1999, the trial court conducted a motions hearing where the court decided to admit certain statements Red Star made to inmates and jailhouse personnel while awaiting trial. The trial court, however, denied the admission of any mention of a prior act where, in 1994, Red Star allegedly sexually assaulted a disabled female in Meade County. The trial resulted in a hung jury.

[¶ 6.] The retrial commenced on October 15, 1999, and Red Star was convicted on both counts. In this retrial, the court allowed the State to present evidence relating to a Meade County incident involving an alleged rape. Red Star was sentenced to serve two concurrent eight-year sentences. Red Star filed an appeal, stating the following issues:

1. Whether the trial court erred in admitting evidence of a prior bad act of an alleged rape and whether the trial court erred in denying the defense to challenge the evidence of the alleged rape.

2. Whether the jury instructions for first-degree burglary comport with applicable state law.

3. Whether the trial court erred in allowing statements made by Red Star to two inmates at the local jail and to law enforcement personnel as voluntary.

4. Whether the trial court erred in holding Red Star competent to stand trial.

## ISSUE 1

[¶ 7.] **Whether the trial court erred in allowing evidence of a prior bad act of an alleged rape and whether the trial court erred in denying the defense to challenge the evidence of the alleged rape.**

[¶ 8.] On March 10, 1999 the trial court heard arguments by counsel on the motion to introduce prior bad act evidence. In denying the State's motion, the court stated:

> I just can't see how the fact that a person has done an act of rape previously is fair to present to the trier of fact in the present case because there is so much tendency to believe that if it happened once before it probably happened again, and that's exactly what the law says we can't allow it for.... I just don't see how any of those matters are addressed by the other act evidence that the State wants to provide and the motion to introduce that information is denied.

After making such ruling, the trial court issued an order denying the State's Motion for Introduction of Specific Other Act Evidence on August 9, 1999. In the trial court's order, it states:

> [T]he Court having found that the facts of the prior bad act are dissimilar to the charges herein and that there is no rela-

tionship to the facts of the current allegations.... [T]he Court having found that the pro-offered evidence would be unfairly prejudicial in the sense that it would cause the jury to believe if it happened once before, it probably happened again; the Court finds that the sole reason for showing the Defendant's propensity to commit the crimes charge[d] and the pro-offered evidence is therefore irrelevant; the Court further having found that, the prior bad act evidence does not show motive, opportunity, intent, preparation, plan, identity, absence of mistake or accident ... it further being in the interest of justice ... the State's Motion ... is hereby denied.

[¶ 9.] After the jury was unable to reach a verdict in the first trial, the State, in its retrial of Red Star, again made a motion to introduce the prior bad act evidence. On October 6, 1999, the trial court again heard pre-trial motions, including the State's motion to introduce prior bad act evidence. After this motion hearing, the court held that Red Star's intent was at issue, and it would allow this evidence to be introduced at the second trial. The court, without further explanation, also found that although the evidence was abundantly prejudicial, it was "far more probative than its prejudicial effect."

[¶ 10.] A trial court's ruling on a motion to suppress is reviewed under an abuse of discretion standard. *State v. McGarrett*, 535 N.W.2d 765, 767 (S.D. 1995); *State v. Almond*, 511 N.W.2d 572, 574 (S.D.1994); *State v. Johnson*, 509 N.W.2d 681, 683 (S.D.1993). An abuse of discretion occurs only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached the same conclusion. *Wuest v. McKennan Hosp.*, 2000 SD 151, 619 N.W.2d 682. Evidentiary rulings made by

the trial court are presumed correct. *State v. Larson*, 1998 SD 80, ¶ 10, 582 N.W.2d 15, 17. Red Star must prove not only that the trial court abused its discretion by allowing prior bad act testimony, but that he was prejudiced by such error. SDCL 15–6–61.

[¶ 11.] Bad act evidence is controlled by SDCL 19–12–5, which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

We have recently stated that SDCL 19–12–5, patterned after Federal Rules of Evidence 404(b), is a rule of inclusion, rather than a rule of exclusion. *State v. Wright*, 1999 SD 50, ¶ 13, 593 N.W.2d 792, 798; *but see Wright*, 1999 SD at ¶ 38, 593 N.W.2d at 805 (Sabers and Amundson, J.J., dissenting). Bad acts evidence under 404(b) "is admissible when similar in nature and relevant to a material issue[.]" *Wright, supra*, at 800. This rule is borne out of the need to prove an element of the crime, not to show he is a bad person. *Id.; see also State v. Werner*, 482 N.W.2d 286 (S.D. 1992) (Sabers and Amundson, J.J., dissenting). Without such showing of relevance, such evidence is inadmissible under 404(b). The bad acts evidence in this case is relevant to the issue of specific intent, an element of the crime of attempted rape.

Therefore, the state has shown relevance for the other act evidence.

[¶ 12.] In *Wright*, however, we held that certain safeguards must be taken into account before the jury could consider prior bad acts. The relevant safeguard at issue here is that "[b]efore a jury may consider facts relating to other acts as proof of an issue relevant to the present offense, the jury must conclude the defendant committed the other acts by a preponderance of the evidence." *Wright*, 1999 SD ¶ 14, 593 N.W.2d at 799. It is clear the *jury* did not make this determination, as no jury instruction was given as to the necessity of them finding that the Meade County rape actually occurred. Even the trial court readily admitted at least three times at the October 6, 2000 motion hearing that it did not matter or it was irrelevant whether Red Star committed the prior bad act. This is clearly impermissible under *Wright*. The threshold safeguards delineated in *Wright* are jealously protected and interminably enforced. By failing to demand the jury to determine whether the 1994 incident actually occurred, the trial court abused its discretion.

[¶ 13.] Likewise, it was also error for the trial court to deny Red Star the opportunity to challenge the credibility of the underlying prior bad act of the alleged rape in Meade County. Beside the reverse field of the trial court in allowing the prior bad act evidence, Red Star was not permitted to challenge the credibility of that evidence.* Red Star wanted to chal-

---

* While a trial court does not always have to give an explanation for its change of mind, the court should establish an appropriate record when reversing a proper order. A Massachusetts' court put it best:

Particularly when reversing field on a motion to suppress, a judge ought to place in the record some words of explanation for the changed decision. That explanation need not be elaborate but should provide some clue of the judge's mind. The absence of any findings and explanation greatly hampers review. Perhaps worse, it creates an atmosphere of arbitrary decision making.

lenge the evidence used by the State with expert testimony explaining incriminating statements he had made and allow the experts to inform the jury of Red Star's mental state at the time these statements were made. "When a defendant is denied the ability to respond to the State's case against him, he is deprived of 'his fundamental constitutional right to a fair opportunity to present a defense.'" *Crane v. Kentucky*, 476 U.S. 683, 687, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). We cited in *State v. Iron Necklace*, 430 N.W.2d 66, 75 (S.D.1988), that fundamental fairness requires "that criminal defendants be afforded a meaningful opportunity to present a complete defense."

[¶ 14.] It is only fair to allow the defense to challenge credibility and reliability of such evidence. This is especially true when the trial court disallowed Red Star to at least inform the jury that the 1994 rape charge had been dropped. Since this Court requires a jury determination under *Wright*, it is incomprehensible that a charged individual cannot challenge whether the alleged bad act actually took place. In defense to the bad act claim, Red Star was denied the opportunity to meaningfully contest the State's evidence. In addition, he was foreclosed from presenting his side of the story. It is inconsistent to allow one version of the facts to be presented to the jury when that body is required to weigh evidence in reaching its determination. As a matter of fairness, a defendant in a criminal case should have the opportunity to tell the jury his or her version of the facts. We have often stated that one is not entitled to a perfect trial, but is entitled to a fair one. *Black v. Class*, 1997 SD 22, ¶ 24, 560 N.W.2d 544; *State v. Raymond*, 540 N.W.2d 407 (S.D.

1995). On this record it appears Red Star did not receive a fair trial.

## ISSUE 2

[¶ 15.] **Whether the jury instructions for first-degree burglary comport with applicable state law.**

■■■ [¶ 16.] Red Star argues that the instructions on first degree burglary do not properly reflect the law. Red Star argues, according to SDCL 22–32–1, before a person can be held criminally liable for first-degree burglary, he must form "the intent to commit *any crime*" while inside an occupied structure. Red Star contends that the act of sexual penetration is not a crime, therefore, the Jury Instructions 8 and 12 do not properly reflect the law. Thus, he is entitled to a new trial.

The trial court instructed the jury in Instruction Number 8:

> One of the elements of first-degree burglary involves entering or remaining in an occupied structure with a specific intent. In this case the State must prove either that the Defendant entered the structure after forming the specific intent to commit an act of sexual penetration or that the Defendant unlawfully entered the structure and remained therein after forming the intent to commit an act of sexual penetration.

[¶ 17.] The court also instructed the jury in Instruction Number 12:

> In the crime of first degree burglary there must exist in the mind of the perpetrator, the specific intent to commit the crime of second-degree rape. More precisely, the Defendant must specifically intend to accomplish an act of sexual penetration with another person. The question you must ask in determining if the Defendant had the required

---

*Commonwealth v. Downs*, 31 Mass.App.Ct. 467, 579 N.E.2d 679, 682 (1991). Not only must a trial court make a relevancy determi-

nation and balancing of prejudicial versus probative effect, the court should also state why it is reversing the prior determination.

specific intent to second degree rape is, did the Defendant specifically intend to accomplish an act of sexual penetration of Shannon Spears? If that specific intent did not exist, this crime has not been committed. In the crime of second-degree rape there must exist in the mind of the perpetrator the specific intent to accomplish an act of sexual penetration with another person. If that specific intent did not exist, the crime was not committed. The intent with which an act is done is shown by the circumstances surrounding the act, the manner in which it is done and the means used.

Red Star argues that the instruction should read "with the intent to commit rape" rather than "with the intent to commit an act of sexual penetration" as the former would actually constitute a crime under SDCL 22–32–1, the burglary statute.

■ [¶ 18.] A trial court must present only those instructions to the jury which are supported by competent evidence and set forth the applicable law. *State v. Shadbolt*, 1999 SD 15, ¶ 12, 590 N.W.2d 231, 233. The trial court deemed the intent necessary to commit second degree rape was the intent to commit an act of sexual penetration. *See State v. Schuster*, 502 N.W.2d 565, 568–69 (S.D.1993). SDCL 22–22–1 provides: "Rape is an act of sexual penetration accomplished with any person under any of the following circumstances...." This definition, coupled with the circumstances of this case, makes the intent to sexually penetrate Ms. Spears part and parcel of the charged rape. Instructions are adequate if they correctly state the applicable law. *Shadbolt, supra.* As the given burglary instruction correctly sets forth the elements of the crime charged, we find no error as to this issue.

## ISSUE 3

[¶ 19.] **Whether the trial court erred in allowing statements made by Red Star to two inmates at the local jail and to law enforcement personnel as voluntary.**

■ [¶ 20.] Red Star, in a bragging type fashion, divulged incriminating information regarding his attempted ·rape of Shannon Spears. In fact, there was testimony from two inmates that Red Star's constant rendition of his crime pestered those around him. For whatever reason, Red Star initiated this incriminating information and freely discussed it with anyone who would listen.

■ [¶ 21.] It is well-settled law that when there is no state action, no constitutional violation could be said to have occurred. *See Jones v. Gutschenritter*, 909 F.2d 1208, 1211 (8th Cir.1990); *see generally Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). It is also true that statements made in casual conversation from one inmate to another do not implicate constitutional protections. *State v. Hofman*, 1997 SD 51, 562 N.W.2d 898 (SD 1997). The statements made by Red Star to other inmates are not constitutionally protected. The inmates were not, nor alleged to be, agents of the State. There is absolutely no evidence to suggest that the other inmates were state actors. Therefore, we need not engage in further analysis as to whether Red Star's statements to other inmates were voluntary.

■ [¶ 22.] Since Officer Biwer is an agent of the state, we determine whether Red Star's statements were voluntarily made. While being escorted to the shower, Red Star told Officer Biwer that he "did not rape Shannon Spears. I stuck my dick in her but I did not rape her." In assessing voluntariness of these statements, the trial court must consider the

effect of the totality of the circumstances on the will of the defendant and whether his will was overborne. *State v. Gesinger*, 1997 SD 6, ¶ 12, 559 N.W.2d 549, 551. We will only overturn a trial court's determination of voluntariness if it is clearly erroneous. *State v. Smith*, 1998 SD 6, ¶ 7, 573 N.W.2d 515, 517. On review, the evidence is considered in the light most favorable to the trial court's finding. *Id.* (citing *State v. DeNoyer*, 541 N.W.2d 725, 731 (S.D. 1995)).

[¶ 23.] "An accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*" *State v. Blue Thunder*, 466 N.W.2d 613, 616 (S.D. 1991) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)) (emphasis supplied). Moreover, before this Court will engage in a factored analysis of whether Red Star gave involuntary statements to law enforcement, there must be a finding that Red Star was subject to custodial interrogation. "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *State v. Boykin*, 432 N.W.2d 60, 64 (S.D.1988) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980)). While custody is evident as Red Star was incarcerated, it cannot be said that he was interrogated.

[¶ 24.] Officer Biwer testified that he asked no questions of Red Star and that he strictly adhered to office policy to not talk to inmates about their pending case. Red Star's statements to Officer Biwer were given without provocation. There is support in the record that the statements made by Red Star were given of his own freewill and were not made at the behest of law enforcement. In addition, no coercion was used, no promises were made, nor were any tactics used that could be construed as improper police conduct. The State has proven beyond a reasonable doubt that Red Star's will was not overborne. Based on the totality of the circumstances, the statements made by Red Star were voluntarily made. Thus, no error occurred in admitting these voluntary statements.

[¶ 25.] We have considered the remaining issue and find it without merit. Reversed and remanded for proceedings not inconsistent with this opinion.

[¶ 26.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 27.] SABERS, Justice, concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 28.] I cannot join issues 1 or 2 as they shake the very foundation of our justice system. The presumption of innocence and the fact that the state must prove *every element* of the crime charged beyond a reasonable doubt to the satisfaction of twelve jurors. Although the majority opinion does determine that Red Star did not receive a fair trial, it may become best known for the unfair trials it will create. The language of the majority opinion will create "more harm than good."

[¶ 29.] **1. THE TRIAL COURT ERRED IN REVERSING COURSE AND PERMITTING THE ADMISSION OF PRIOR BAD ACT EVIDENCE DURING THE SECOND TRIAL.**

[¶ 30.] The trial court originally determined that any introduction of the prior

alleged rape was impermissible. In so holding, the trial court stated it could not fathom "how the fact that a person has done an act of rape previously is fair to present to the trier of fact in the present case because there is so much tendency to believe that if it happened once before it probably happened again." This reasoning demonstrates the trial court's understanding of the need to exclude such evidence. Subsequently, the jury was unable to reach a verdict and the State sought retrial. Reversing field, the trial court allowed the introduction of this damaging evidence without explanation in the second trial.

[¶ 31.] The only reason evident in this record for permitting this prior act evidence the second time was that without it, the first trial ended in a hung jury. That is not a good enough reason.

[¶ 32.] Has the abuse of discretion standard become so flimsy that we accept any decision by the trial court? It is not apparent from the record why the trial judge's ruling changed. As stated, the only difference seems to be the result. I dread the impression such events leave in the mind of the public.

[¶ 33.] I submit the trial court had it right the first time. Prior bad act evidence is not admissible to show that since a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged. *State v. Steele*, 510 N.W.2d 661, 668 (S.D.1994). As acknowledged by the trial court in the first instance, the act sought to be introduced by the State attempted to accomplish this impermissible goal. Remarkably, in the second trial, the same judge deemed the same evidence acceptable and allowed it under SDCL 19–12–5.

[¶ 34.] It is no secret I take issue with the view that SDCL 19–12–5 is a rule of inclusion. *See State v. Wright*, 1999 SD 50, ¶ 38, 593 N.W.2d 792, 805; *State v. Walton*, 1999 SD 80, ¶ 55, 600 N.W.2d 524, 535 (Sabers, J., dissenting). Yet, even those members of this Court who disagree with that position should acknowledge that the trial court erred in admitting this evidence. I encourage my brethren to reconsider my warning in *Walton* that "it is now open season on defendants." Here's why:

[¶ 35.] The trial court erred in admitting this evidence the second time under the intent exception to the general exclusion of prior bad acts. "When considering whether the admission of prior bad acts is probative of intent, trial courts should compare among other factors, the similarity between the prior bad acts and the crimes with which the defendant is charged." *State v. Chamley*, 1997 SD 107, ¶ 12, 568 N.W.2d 607, 612. This is commonsense. The alleged prior bad act here was not sufficiently similar to warrant the admission of such clearly prejudicial testimony. The prior act was controverted and all charges had been dismissed. In fact, during the first trial, the trial court found that "the facts of the prior bad acts are dissimilar to the charges herein and that there is no relationship to the facts of the current allegations." It is impossible to state it any clearer.

[¶ 36.] As this evidence does not meet the requirement that it be similar to the charged conduct it should have been excluded. "A prior bad act not similar in some important respect to the charged conduct is unlikely to be probative of whether the defendant intended to commit the charged crime." *State v. Moeller*, 1996 SD 60, ¶ 16, 548 N.W.2d 465, 472. The probative value of this evidence is substantially outweighed by the risk of unfair prejudice. Therefore, I would reverse the trial court's admission of this evidence in the second trial.

[¶ 37.] I do concur with the majority opinion result that the proper procedural safeguards must be met before admitting this type of evidence, that the defendant is entitled to challenge this evidence, and that we should reverse and remand for a fair trial.

[¶ 38.] **2. THE TRIAL COURT IM-PROPERLY INSTRUCTED THE JURY ON AN ACT OF SEXUAL PENETRATION, WHICH IS NOT A CRIME, INSTEAD OF THE CRIME OF RAPE.**

[¶ 39.] To sustain a conviction for violating SDCL 22–32–1, the State must prove that Red Star either entered an occupied structure with the intent to commit "any crime" or that he remained in the occupied structure after forming the intent to commit "any crime." SDCL 22–32–1. *See also State v. DeNoyer*, 541 N.W.2d 725, 732 (S.D.1995) (rejecting defendant's contention he was required to have the intent to commit rape before entering the structure). The underlying offense relied upon by the State to prove the first-degree burglary charge was intent to commit a rape. However, the jury instructions failed to inform the jury that Red Star had to enter or remain in the apartment with the intent to commit rape. This is reversible error.

[¶ 40.] The jury was instead instructed twice that to convict Red Star for first-degree burglary they only had to find that he had "intent to commit an act of sexual penetration." An act of sexual penetration is not a crime. The majority opinion establishes abhorrent precedent for future cases. Obviously, intent to commit "any crime" is required before the conviction can stand. This jury instruction, instead of setting forth a crime, sets forth an act that fails to satisfy the definition of any crime in our code. We are faced with the reality that in a jury trial, these instruc-

tions are the only method to inform the fact finder the elements of the crime. I appeal to the members of this Court to recognize and acknowledge that our criminal justice system should not be so easily manipulated. I am fearful that such precedent will lead to the criminalization of innocent conduct now and in the future.

[¶ 41.] These instructions did not comport with South Dakota law and do not establish the elements of first-degree burglary. I am not convinced that this error should be overlooked or justified by some "big picture approach." Therefore, I dissent from the conclusion that the jury was properly instructed. They were not. We should reverse this issue also.

[¶ 42.] In any event, we should require the trial court in Red Star's third trial to make this change to state a criminal act. Otherwise, it may have to do it in Red Star's fourth trial. I fail to see any harm in requiring this accurate statement of the law in the instructions to the jury.

[¶ 43.] I concur in issues 3 and 4.